**In re the BALTIMORE SUN COMPANY, Petitioner.**

No. 87–1207.

United States Court of Appeals, Fourth Circuit.

Submitted Feb. 12, 1988.

Decided Feb. 19, 1988.

G. Stewart Webb, Jr., Craig Ervin Smith, Geoffrey Robert Garinther, Venable, Baetjer & Howard, for petitioner.

Professor Stephen A. Saltzburg, for respondent.

Breckinridge L. Willcox, U.S. Atty., Robert J. Mathias, Charles P. Scheeler, Asst. U.S. Attys., for U.S.

Before WIDENER, HALL and ERVIN, Circuit Judges.

WIDENER, Circuit Judge:

Upon the criminal trial of the case of *United States v. Klein*, et al, in the district court in Baltimore, *The Baltimore Sun* requested access to what it called the venire list, which, in its motion to intervene, it described as "the computer printout used for the selection of the jurors who will serve in the trial of *United States v. Klein and the other former officers or directors of Merit Savings and Loan.*" The clerk of the court and then the district court denied access to such list, although, upon a hearing, the request had been considerably refined to "We would like the list of the

---

jurors who are actually sitting, your Honor." Tr. 17.

This was the status of the case on November 23rd, when the district court held its hearing in open court upon the *Sun's* request for the venire list. The next day, the district court entered its written order denying the request, but the written order responded to a broader request rather than the mere names of the sitting jurors and denied permission for *The Baltimore Sun* to see the venire list as contrasted with the names of the jurors who were sitting. The venire list is described in the district judge's response as a list prepared by the clerk on the morning of trial containing information concerning all jurors who are a part of a venire and which includes their names, addresses, occupations, marital status, spouse's name and spouse's occupation.[1] All of that information is taken from questionnaires which the jurors fill out. Apparently, each side has a duplicate of the venire list, prepared by the clerk the morning of the trial, and exercises its peremptory strikes by crossing names off of the list in its possession. The list of each side is then returned to the clerk, who strikes off the names of those so stricken, leaving the balance of the names as those from which the jury is then chosen by the district judge. See *United States v. Ricks*, 802 F.2d 731 (4th Cir.1986).

All of the information on the venire list is compiled from the completed questionnaires the prospective jurors file and is protected from disclosure by 28 U.S.C. § 1867(f) which protects the "contents of records or papers used by ... the clerk in connection with the jury selection process." So, the jury venire list as such, prior to the time a jury has been selected and seated, should not necessarily be made available to the press or to the public.[2] After a jury has been seated, however, as true in this case when the petition for mandamus was filed, the names of those jurors are just as much a part of the public record as any other part of the case, and we think so also are their addresses in order to identify them. We also are of opinion that the names and addresses of those who have been stricken or otherwise not seated are a matter of public record at that stage of the proceeding. We further think, however, that any information contained on the venire list other than the names and addresses of the veniremen and women should not be made public under § 1867(f) unless some question concerning the same should properly arise within the case being tried.

When the jury system grew up with juries of the vicinage,[3] everybody knew everybody on the jury and we may take judicial notice that this is yet so in many rural communities throughout the country. So, everyone can see and know everyone who is stricken from a venire list or otherwise does not serve. Even in the case before us, the entire *voir dire* proceeding was in open court and attended by the press. But the anonymity of life in the cities has so changed the complexion of this country that even the press, with its vast and imaginative methods of obtaining information, apparently does not know and cannot easily obtain the names of the jurors and of the veniremen and women who did not serve in this case. We think it no more than an application of what has always been the law to require a district court, upon the seating of the panel of a jury and alternates, if any, which will hear a case, to release the names and addresses of those jurors who are sitting, as well as those veniremen and women who have attended court but have not been seated for one reason or another.[4] We do not think,

---

1. All this information except names is apparently included for the convenience of the attorneys and the parties. It is not required by any statute or rule which has come to our attention. An examination of a similar list in the district court in Abingdon, for example, shows that the list contains only names.

2. Although the question is not before us, we do not mean to imply that a district court must necessarily release to the public the names and addresses of those on a venire list prior to the time a jury is seated.

3. See Pope, *The Jury*, 39 Texas L.Rev. 426 (1961).

4. We see no need to and do not base our decision on the First Amendment. *Ashwander v.*

however, that because one is summoned to jury duty that his entire background as disclosed to the court on his questionnaire is necessarily and immediately subject to public scrutiny. Other than the names and addresses, we think the information on the venire list in this case is protected by 28 U.S.C. § 1867(f).

We recognize the difficulties which may exist in highly publicized trials such as the case being tried here and the pressures upon jurors. But we think the risk of loss of confidence of the public in the judicial process is too great to permit a criminal defendant to be tried by a jury whose members may maintain anonymity. If the district court thinks that the attendant dangers of a highly publicized trial are too great, it may always sequester the jury; and change of venue is always possible as a method of obviating pressure or prejudice.

The defendants in this case agree with the district court. They do not want the names and addresses of the jurors turned over to the *Sun* and thus made public. So our opinion is not based on the defendants' Sixth Amendment right to a public trial, see *Press Enterprise*, infra, 464 U.S. 516, 104 S.Ct. 827, Justice Stevens concurring; rather, we have drawn upon the discussion of the Court relating to the jury system in *Press Enterprise Co. v. Superior Court of Cal.*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984), in which the court held that the *voir dire* examination of prospective jurors should ordinarily be open to the public and the press, and in *Press Enterprise Co. v. Superior Court of Cal.*, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986), as well as in other writings of which Pope, *The Jury*, is an example.

While it may well be true, and probably is, that the *Sun* was not diligent in its duty to get the names of the people on the venire list in the *voir dire* proceedings in this case which were open to the public, that does not serve as a reason not to place on the public record, contemporaneously with the trial, the names and addresses of those jurors who are the judges of the facts in the case as well as those from whom the seated jurors were chosen.

We realize that the case of *United States v. Gurney*, 558 F.2d 1202 (5th Cir. 1977), is to the contrary. We do not think, however, that the Fifth Circuit [now the 11th] would come to the same conclusion following *Press Enterprise*. If our surmise is not correct in that regard, with respect, we simply disagree.

We have treated this proceeding as one for mandamus under *Central South Carolina Chapter, Society of Professional Journalists v. Martin*, 556 F.2d 706 (4th Cir.1977), rather than as an appeal of the order of the district court. The appeal in the companion case will be dismissed by separate order.

Being confident that the district court will release to the *Sun* the names and addresses of jurors and alternates sitting in this case, as well as veniremen and women not sitting, the writ of mandamus will not issue.

Let our mandate issue forthwith.[5]

---

*TVA*, 297 U.S. 288, 341, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (Justice Brandeis concurring).

5. We emphasize that we do not deal here with a situation in which there existed realistic threats of violence or jury corruption. Cf. *United States v. Barnes*, 604 F.2d 121 (2d Cir.1979).