COMMONWEALTH of Pennsylvania,

v.

Karl LONG.

Appeal of: Tribune Review Publishing
Company, Appellant.

Commonwealth of Pennsylvania,

v.

Karl Long.

Appeal of: WPXI, Inc., Appellant.

Superior Court of Pennsylvania.

Argued Dec. 7, 2004.
Filed March 31, 2005.

---

3. In light of our disposition of Appellant's first issue, we need not reach the balance of the questions presented.

David A. Strassburger, Pittsburgh, for Tribune Review, appellant.

Walter DeForest, Pittsburgh, for WPXI, appellant.

Bruce A. Antkowiak, Greensburg, for Long, appellee.

John W. Peck II, Asst. Dist. Atty., Greensburg, for Com., appellee.

BEFORE: MUSMANNO, TODD and TAMILIA, JJ.

OPINION BY MUSMANNO, J.:

¶ 1 These appeals involve challenges brought by the Tribune Review Publishing Company ("Tribune Review") and WPXI, Inc. ("WPXI") (collectively, the "Intervenors") to the administrative Order of the Westmoreland County Court of Common Pleas concerning the confidentiality of juror information and the practice of referring to potential and seated jurors by number only.

¶ 2 The trial court described the underlying facts of this case as follows:

The genesis of this litigation was the Commonwealth's prosecution of Karl Long (Defendant), who was convicted for the homicide of his wife, Elaine Long (victim), on August 20, 2003. The four-year history of this case was extensively publicized by the print and broadcast media. During the proceedings, a reporter for the Tribune Review testified that he had written "dozens and dozens" of articles about the Long case.

Jury selection was conducted July 28 through July 30, 2003. The court followed the Juror Questionnaire procedures, which were adopted by the Westmoreland County Court of Common Pleas.[1] While the prospective jurors were referred to only by number, the jury selection process was open to the public and at least one representative of the Intervenors was present in the courtroom during these proceedings. When the court presented the jurors with the questionnaire required by the [Pennsylvania] Supreme Court in [Pennsylvania Rule of Criminal Procedure] 632, it informed them that the information supplied in the questionnaire was confidential and that their right to privacy would be protected to the greatest extent possible. The court also informed the jurors that it would refer to them by juror numbers, rather than by their names, to further protect their right to privacy.

The court entered no orders restraining the press from access to *voir dire*. In fact, the transcript of *voir dire*, in-

1. The administrative Order at issue provides, in relevant part:

The trial judge keeps the original Roster and Questionnaires of the seated jurors under seal until the verdict is delivered.

After the verdict is delivered, unless otherwise ordered, the court assistants destroy the original Juror Information Questionnaires of the seated jurors. The original Juror Roster is filed under seal with the Clerk of Courts. (Certification may be required).

Administrative Order, 6/2/00, at 3.

cluding the individual interviews of the potential jurors, was subsequently purchased by the press as part of the trial record. It should be noted that at no time during *voir dire* or during the trial did the Intervenors petition the court to release the names and home addresses of the jurors selected to hear the case. In short, the Intervenors raised no objection to the jury selection procedure.

From August 4 through August 20, 2003, the court conducted the jury trial. During that time, the court learned that the Intervenors' employees, [Rich] Cholodofski and [Alan] Jennings, made an oral inquiry to members of its judicial staff about acquiring the names and home addresses of the jurors serving on the case. They were informed of the local Juror Questionnaire procedures governing that information and the prohibition contained in ... [Pennsylvania Rule of Criminal Procedure] 632.[2] Neither of the reporters spoke directly to the court; and their counsel did not, at the time, present the court with a formal petition.

On Friday, August 15, 2003, near the close of that day's court session, the court raised concern about events which had the potential to jeopardize the jury's performance of its duties. The court discussed these incidents at side bar, on the record, with both the Defendant's counsel and District Attorney Peck. Although the court did not then rule that any of the reported acts rose to the level of juror interference, the court informed counsel that it was considering seques-

tering the jurors during deliberations. Tentative arrangements were made for sequestration as outlined by the memorandum of Bobbi Weaver,[3] which has been made Court Exhibit No. 2. After further reflection and discussion with all counsel, the Court decided that the jurors could be given adequate assurance of inviolability by permitting them to park their vehicles at a secure remote location and then having the Sheriff's Department escort them to and from the courthouse. This security procedure, much less radical than sequestration, was not implemented to prevent the Intervenors from interviewing the jurors at the end of the trial, but rather to address concerns for the feelings of the jurors.

On August 21, 2003, at 2:19 p.m., [WPXI] filed a "Motion by WPXI, Inc. to Intervene and Obtain Access to Juror Names and Addresses and to Request a Hearing." At the same time [the Tribune Review] filed "Petition to Intervene and Unseal Jury List." On the previous day at a time during the jury's deliberation, counsel for the Intervenors had come to the court's chambers and thereafter to the courtroom asking the court for a hearing regarding furnishing the names and home addresses of the jurors impaneled in this case. As the court was presiding over jury deliberations and a full schedule of previously scheduled cases, a hearing on the requests was scheduled for the earliest available date, September 2[, 2003].

---

**2.** Rule 632 provides in pertinent part as follows:

> The information provided by the jurors on the questionnaires shall be confidential and limited to use for the purpose of jury selection only. Except for disclosures made during *voir dire,* or unless the trial judge otherwise orders pursuant to paragraph (F),

this information shall only be made available to the trial judge, the defendant(s) and the attorney(s) for the defendant(s), and the attorney for the Commonwealth.

Pa.R.Crim.P. 632(B)

**3.** Presumably, Bobbi Weaver is a member of the trial court's staff.

On September 2, 2003, the [trial] court heard argument from the Intervenors, who informed the court that, among other things, they challenged the constitutionality of the administrative order of the Court of Common Pleas of Westmoreland County governing the confidentiality of juror information. They also suggested that Rule 632 of the [Pennsylvania] Supreme Court's Rules of Criminal Procedure requiring confidentiality was unconstitutional. By Order of September 17, 2003, the [trial] court granted Intervenors standing. Again, on November 20, 2003, the [trial] court conducted an evidentiary hearing, where Intervenors presented testimony. Acting on behalf of the jurors' interests, the [trial] court also admitted evidence that it felt was relevant to disclosure of [the jurors'] names and home addresses.

Trial Court Opinion, 6/7/04, at 1–4 (footnotes omitted). The trial court denied the Intervenors' Petitions on December 31, 2003. Thereafter, each Intervenor filed a timely Notice of appeal.

¶ 3 On appeal, the Tribune Review raises the following single issue: "Does the First Amendment to the United States Constitution, Article I, Section 11 of the Pennsylvania Constitution, and/or the common law create a right of public access to the list of trial jurors?" Brief for Tribune Review at 4. WPXI raises the following two issues:

1. Whether the Court of Common Pleas violated the First and Fourteenth Amendments to the United States Constitution, Article I, [Sections] 9 and 11 of the Pennsylvania Constitution, and the common law, by refusing WPXI access to the list of empanelled jurors in this case, and/or access to the identities and addresses of the empanelled jurors in this case?

2. Whether the Administrative Order of the Court of Common Pleas of Westmoreland County entitled "Juror Questionnaire Procedures June 1, 2000 Revised June 3, 2000" and its particular application in this case[,] which denies the right of access to the list of [empanelled] jurors in criminal cases as a matter of administrative practice[,] violates the First and Fourteenth Amendments to the United States Constitution, and common law, by refusing WPXI (a) access to the list of impaneled jurors in criminal cases generally and in this case in particular, and (b) access to the identities and addresses of the impaneled jurors in criminal cases generally and in this case in particular?

Brief for WPXI at 4.

¶ 4 Before we reach the merits of the Intervenors' appeals, we must first determine whether the claim of the Tribune Review is moot. Following the initial hearings regarding this matter, the Tribune Review requested and received the payroll records of jurors, for the relevant time period, from the Westmoreland County Controller. Given the fact that the trial in the instant case lasted considerably longer than any other trial during that time period, the jurors were easily identified through the payroll records. The payroll records included not only the jurors' names, but also their home addresses. Thereafter, the Tribune Review was able to interview several of the jurors empaneled in the *Long* case. As the Tribune Review did in fact secure the names and addresses of the *Long* jurors, we must determine whether its actions rendered the issue presented in this appeal, as raised by the Tribune Review, moot.

¶ 5 The courts of this Commonwealth have long held that an appeal is not ren-

dered moot where there is a reasonable expectation that a party will be subject to such judicial orders again in the future. *Commonwealth v. Frattarola*, 336 Pa.Super. 411, 485 A.2d 1147, 1150 (1984). In this case, we are presented with a controversy that is capable of repetition, yet evading review. Consequently, we conclude that this issue has not been rendered moot by the Tribune Review's actions in securing, through alternative means, the names and addresses of the jurors empaneled in the *Long* case.

¶ 6 Having concluded that the issue raised by the Tribune Review is not moot, we must now determine whether the Intervenors have properly preserved their issues for appellate review by filing sufficiently specific Concise Statements of issues raised on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). The trial court concluded that the Intervenors' Rule 1925(b) Statements were too vague and, thus, deemed all issues waived on appeal. Trial Court Opinion, 2/18/04, at 2–3. We disagree.

¶ 7 In *Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306 (1999), the Pennsylvania Supreme Court specifically held that "from this date forward, in order to preserve their claims for appellate review, appellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to [Pennsylvania Rule of Appellate Procedure] 1925." *Lord*, 719 A.2d at 309. "Any issues not raised in a Rule 1925(b) statement will be deemed waived." *Id.* This Court has also explained that "a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no Concise Statement at all." *Commonwealth v. Dowling*, 778 A.2d 683, 686–87 (Pa.Super.2001).

When the trial court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues. In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all.

*Commonwealth v. Lemon*, 804 A.2d 34, 37 (Pa.Super.2002) (citations and quotations omitted).

¶ 8 Upon review of the applicable case law and the Intervenors' Concise Statements, we conclude that the Intervenors' Concise Statements were sufficiently specific to preserve their claims for appellate review. While the Intervenors' Concise Statements could have been more artfully drafted, the issues stated were sufficiently specific to allow the trial court to identify the issues that the Intervenors intended to raise on appeal. Accordingly, we conclude that the Intervenors preserved their issues for appellate review.

¶ 9 We note, however, that WPXI's Concise Statement based its constitutional challenge on the First and Fourteenth Amendments to the United States Constitution, and Article I, Section 11 of the Pennsylvania Constitution. Accordingly, WPXI's challenge based upon Article 1, Section 9 of the Pennsylvania Constitution is waived. *Lord*, 719 A.2d at 309 (holding that "[a]ny issues not raised in a [Concise] statement will be deemed waived").

¶ 10 On appeal, the Intervenors argue that a constitutional and a common law right of access exists entitling the media to the names and addresses of the jurors empaneled in the instant case. We

will first address whether the Intervenors are entitled to the empaneled jurors' names and addresses pursuant to the constitutional right of access.[4] The Intervenors assert that both the First Amendment to the United States Constitution[5] and Article I, Section 11 of the Pennsylvania Constitution,[6] provide the media with this right of access.[7]

¶ 11 Before undertaking our analysis, we are mindful of our standard of review. "When an appeal challenges a trial court's decision to grant or deny access to judicial proceedings, we will reverse only if we find that the trial court abused its discretion." *In the Interest of M.B.*, 819 A.2d 59, 61 (Pa.Super.2003) (citations omitted). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." *Paden v. Baker Concrete Constr.*, 540 Pa. 409, 658 A.2d 341, 343 (1995). We find no such abuse of discretion in this case.

¶ 12 The Intervenors' constitutional challenge is premised upon their contention that the First Amendment qualified right of access extends to empaneled jurors' names and addresses. The Intervenors assert that the trial court's refusal to provide the names and addresses of the empaneled *Long* jurors and its use of numbers to identify the jurors constituted a "closure" of judicial proceedings, which violated the United States Supreme Court's ruling in *Press–Enterprise*.[8] The Interve-

---

4. We note that 42 Pa.C.S.A. § 4524 provides that the "list of names and addresses of persons assigned to each jury array shall be prepared and made available for public inspection ... no later than 30 days prior to the first date on which the array is to serve." The Intervenors have not argued that they were denied access to the jury array.

5. The First Amendment to the United States Constitution explicitly provides:

   Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

   U.S. Const. amend. I. The United States Supreme Court has interpreted the rights afforded in the First Amendment to include an implicit right of access to criminal trials. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (plurality opinion); *accord Press–Enterprise Company v. Superior Court*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) The First Amendment of the United States Constitution is applicable to the states by operation of the Fourteenth Amendment.

6. Article I, Section 11 of the Pennsylvania Constitution provides:

   All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

   Pa. Const. art. I, § 11.

7. The Pennsylvania Supreme Court has recognized that the right to an open trial afforded by Article I, Section 11, of the Pennsylvania Constitution provides no greater rights that that afforded by the United States Constitution. *See Commonwealth v. Hayes*, 489 Pa. 419, 414 A.2d 318, 322 (1980). Accordingly, we will proceed with our analysis pursuant to the First Amendment of the United States Constitution.

8. The Intervenors suggest that the practice of referring to potential jurors by number only, employed by the Westmoreland County Court of Common Pleas, constituted the use of an "anonymous jury." However, the use of an anonymous jury necessarily requires that the jurors' identities be withheld not only from the public, but also the parties. *See U.S. v. Scarfo*, 850 F.2d 1015 (3rd Cir.1988). In this case, the names and addresses of each poten-

nors argue that the trial court was required to (1) make specific findings demonstrating that the release of the empaneled jurors' names and addresses threatened a compelling state interest; (2) find that a lack of alternatives existed which would preserve the state interest; and (3) find that the closure was narrowly tailored to preserve that state interest, before it could withhold the jurors' names and addresses.

¶ 13 The Pennsylvania Supreme Court has explained that "[i]t has been established already that the First Amendment to the Federal Constitution is broad enough to encompass the qualified right of access to criminal trials to the public and media, and that this qualified right of access extends to *voir dire* examinations of potential jurors." *Commonwealth v. Berrigan*, 509 Pa. 118, 501 A.2d 226, 232 (1985). The qualified right of access to criminal proceedings is premised upon the presumption of openness. This Court has recognized that "[i]n Pennsylvania, the common law, the First Amendment to the United States Constitution, and the Pennsylvania Constitution, all support the principle of openness." *Storms v. O'Malley*, 779 A.2d 548, 569 (Pa.Super.2001). However, neither the United States Supreme Court, nor the Pennsylvania courts have yet addressed whether this principle of openness extends to require the disclosure of the names and addresses of empaneled jurors.

■ ¶ 14 Upon review of the applicable case law, we conclude that while the First Amendment qualified right of access provides a right to attend **court proceedings**;

it does not compel the trial court to disclose the names and addresses of empaneled jurors. Inasmuch as the Intervenors have not contended that they have been denied access to any judicial proceedings or to any transcripts of judicial proceedings, we conclude, for the following reasons, that the Intervenors' constitutional qualified right of access has not been violated.[9]

■ ¶ 15 *Press–Enterprise* and its progeny, upon which the Intervenors rely, provide for a right of physical access to attend and observe judicial proceedings.[10] *See Press–Enterprise Company v. Superior Court*, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) ("*Press–Enterprise II*") (holding that the First Amendment qualified right of access extends to preliminary hearings); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) (striking down a statute that mandated the closure of trials during the testimony of minor victims of sex crimes); *Press–Enterprise*, 464 U.S. at 510–511, 104 S.Ct. 819(concluding that the qualified right of access applies to the *voir dire* examination of jurors); *Richmond Newspapers*, 448 U.S. at 561, 100 S.Ct. 2814 (invalidating a trial court order excluding the public from attending a murder trial).

¶ 16 In *Press–Enterprise*, the United States Supreme Court addressed the issue of whether the physical closure of the *voir dire* proceedings violated the presumption of openness. The trial court in that case prohibited access to a large portion of the

tial juror, including those actually empaneled in this case, were known to both the defense and prosecution. Consequently, the practice of referring to potential jurors by number does not constitute the use of an anonymous jury.

9. We note that this case does not involve a situation wherein the names and addresses of potential jurors were stated in open court during *voir dire*.

10. All media enjoys that same right of access as the public. *Richmond Newspapers*, 448 U.S. at 573, 100 S.Ct. 2814.

*voir dire* proceedings in a trial for the rape and murder of a teenage girl. Prior to the start of *voir dire,* Press–Enterprise Co. requested that *voir dire* be open to the public. The prosecution opposed the motion, citing concerns of juror privacy. *Id.* The trial court agreed with the prosecution and permitted Press–Enterprise Co. to attend the "general *voir dire*" only. *Id.* All but three days of the six weeks of *voir dire* were closed to the public. *Id.*

¶ 17 After the jury was empaneled, Press–Enterprise Co. filed a motion for the release of the *voir dire* transcripts, which the trial court denied. *Id.* at 504–05, 104 S.Ct. 819. Press–Enterprise Co. again sought release of the *voir dire* transcripts after the defendant had been convicted and sentenced to death. Again, the trial court refused to release the transcripts. *Id.* at 505, 104 S.Ct. 819. On appeal, the United States Supreme Court held that the trial court erred in closing the *voir dire* proceedings, as it failed to articulate "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 510, 104 S.Ct. 819.

¶ 18 It is inaccurate to describe the present case as a closure case, which would invoke the requirements of *Press–Enterprise.* Clearly, none of the judicial proceedings herein, including *voir dire,* were closed to the public or the media. Similarly, the Intervenors may not assert that the trial court prohibited them from attending any court proceeding. In fact, the trial judge conducted the *Long* trial in the largest courtroom available in the Westmoreland County Courthouse in order to accommodate the large number of media and persons who wished to observe all phases of the trial. Trial Court Opinion, 12/31/03, at 11. Consequently, the Westmoreland County administrative Or-

der and the trial court's referral to jurors by number only did not constitute a closure, triggering the requirements of *Press–Enterprise.*

¶ 19 Our conclusion that the First Amendment qualified right of access provides the right to attend court proceedings, but does not require the disclosure of the names and addresses of empaneled jurors, finds support in other sources. The Supreme Court of Delaware has directly addressed this issue and concluded that the First Amendment qualified right of access does not extend to the disclosure of the names of jurors. *Gannett Co. v. State of Delaware,* 571 A.2d 735 (Del.1990). The *Gannett* court specifically considered "whether the news media have a qualified first amendment right to require announcement of jurors' names during a highly-publicized first-degree murder trial, even though the parties have full access to such information and the proceedings are otherwise open to the public." *Id.* at 736. Prior to *voir dire,* the *Gannett* trial court issued an order directing the prothonotary to keep the names of all jurors confidential, except as to the parties, and directed that the jurors were to be assigned numbers and referred to only by number during *voir dire.*

¶ 20 The publisher of a state-wide daily newspaper appealed the trial court's order in *Gannett,* arguing "that even though it never was excluded from the courtroom at any stage of the proceedings, including jury *voir dire* and selection, the Order requiring court personnel to keep jurors' names confidential constitutes a partial closure of the trial." *Gannett,* 571 A.2d at 739. The Delaware Supreme Court concluded that the practice of referring to jurors by number did not constitute a closure under *Press–Enterprise. Gannett,* 571 A.2d at 741. The Delaware Supreme Court further held that even if the *Press–*

*Enterprise* analysis were applicable, no qualified right of access exists to jurors' names and addresses pursuant to *Press–Enterprise. Id.* at 751. We agree with the sound reasoning of the Delaware Supreme Court.

¶ 21 We find additional support for the proposition that the First Amendment does not provide a qualified right of access to empaneled jurors' names and addresses in the *Principles for Juries and Jury Trials* promulgated by the American Bar Association's ("ABA") American Jury Project.[11] The preamble to the *Principles for Juries and Jury Trials* notes that "[e]ach principle is designed to express the best of current-day jury practice in light of existing legal and practical constraints." American Jury Project, American Bar Association, *Principles for Juries and Jury Trials* (2004), at 1. Principle 7 provides in relevant part:

**PRINCIPLE 7—COURTS SHOULD PROTECT JUROR PRIVACY INSOFAR AS CONSISTENT WITH THE REQUIREMENTS OF JUSTICE AND THE PUBLIC INTEREST**

a. Juror interest in privacy must be balanced against party and public interest in court proceedings.

   1. Juror *voir dire* should be open and accessible for public view except as provided herein. Closing *voir dire* proceedings should only occur after a finding by the court that there is a threat to the safety of the jurors or evidence of attempts to intimidate or influence the jury.

   2. Requests to jurors for information should differentiate among information collected for the purpose of juror qualification, jury administration, and *voir dire.*

\* \* \*

8. Following jury selection and trial, the court should keep all jurors' home and business addresses and telephone numbers confidential and under seal unless good cause is shown to the court which would require disclosure. Original records, documents and transcripts relating to juror summoning and jury selection may be destroyed when the time for appeal has passed, or the appeal is complete, whichever is longer, provided that in criminal proceedings, the court maintains for use by the parties and the public exact replicas (using reliable process that ensures their integrity and preservation) of

---

11. The American Jury Project's *Principles for Juries and Jury Trials* is the result of six months of intensive work. *See* http://www.abanet.org/media/releases/news120904.html. The American Jury Project conducted a National Symposium on October 15, 2004, at Washington and Lee University School of Law in order to analyze the proposed revisions to the ABA standards on the jury system and consolidate the revisions with the current ABA standards. *See* http://www.abanet.org/jury/principles.html. The ABA reported that judges, lawyers, academics, jury experts, court administrators, bar leaders and others interested in the health of the jury system participated in the Symposium. *Id.* On December 9, 2004, the ABA President, Robert J. Grey, Jr., presented the proposed *Principles for Juries and Jury Trials* to Supreme Court Justice Sandra Day O'Connor, the Honorary Chair of the ABA Commission on the American Jury. *See* http://www.abanet.org/media/releases/news120904.html. The *Principles for Juries and Jury Trials* were adopted by the Board of Governors of the American Bar Association at the mid-year meeting in February, 2005.

those items and devices for viewing them.

* * *

c. If cameras are permitted to be used in the courtroom, they should not be allowed to record or transmit images of jurors' faces.

*Id.* at 7–8. The *Principles for Juries and Jury Trials* reflects the idea that while the media should be permitted to attend criminal proceedings, the jurors are nonetheless entitled to their privacy and the courts must act accordingly to protect jurors' privacy.

¶ 22 In addition, a number of states have enacted legislation with the intent to protect jurors' privacy. New York has adopted legislation to protect the privacy of jurors by keeping empaneled jurors' names and addresses confidential. N.Y. Judiciary Law § 509(a) (2003); *see also Newsday, Inc. v. Sise,* 71 N.Y.2d 146, 524 N.Y.S.2d 35, 38–39, 518 N.E.2d 930 (1987). Delaware has also enacted juror privacy legislation. Del.Code Ann. Tit. 10 § 4513; *see also Gannett,* 571 A.2d 735 (holding that the media did not have the right to require announcement of jurors' names during a highly publicized trial, even though the parties have full access to such information and the proceedings are otherwise open to the public). Indiana legislation provides that the·release of names and identifying information of potential jurors is within the discretion of the trial judge. Ind.Code § 2–210(5).

¶ 23 The Intervenors also cite *State ex. rel. Beacon Journal Publishing Co. v. Bond,* 98 Ohio St.3d 146, 781 N.E.2d 180 (2002). We find that case to be unpersuasive. In *Bond,* upon review of *Press–Enterprise* and its progeny, the Ohio Supreme Court concluded that the United States Supreme Court has "acknowledged and gradually expanded the public's First

Amendment right of access." *Id.* at 192. Relying upon its interpretation of this case law, the Ohio Supreme Court determined that the United States Supreme Court would expand the First Amendment qualified right of access to the list of names and addresses of empaneled jurors. *Id.*

¶ 24 We reject the conclusion of the Ohio Supreme Court. While the United States Supreme Court has expanded the types of judicial *proceedings* which the public and the media are afforded the right to attend, the Court has not extended this right beyond physical access to the courtroom, as the Ohio Supreme Court erroneously concluded. The United States Supreme Court in *Press–Enterprise,* in determining that a closure may be warranted in some circumstances, noted that in the fair administration of justice, a court may "impose reasonable limitations on access to a trial." *Press–Enterprise,* 464 U.S. at 511 n. 10, 104 S.Ct. 819 (citation omitted). Our reading of *Press–Enterprise* and its progeny convinces us that the First Amendment right of access provides the public and the media with a right to *physically attend and observe criminal trials.* Consequently, we do not find the rationale of the Ohio State Supreme Court in *Bond* to be persuasive.

¶ 25 The remaining authority cited by the Intervenors is also unpersuasive. The Intervenors contend that the case of *United States v. Antar,* 38 F.3d 1348 (3rd Cir. 1994) supports their position. Like the instant case, *Antar* involved a high-profile criminal prosecution. However, the similarities end there. In *Antar,* the district court requested that the media voluntarily leave the courtroom during the *voir dire* proceedings due to space constraints. *Id.* at 1351. The trial court then sealed the *voir dire* transcript to protect the jurors' privacy after the potential jurors stated their names and addresses during *voir*

*dire.* When the trial court unsealed the *voir dire* transcript, it placed restrictions upon the media's use of juror-identifying information. *Id.* at 1352. The media challenged these actions. On appeal, the Third Circuit Court of Appeals concluded that the trial court's request that the media voluntarily leave the courtroom during the *voir dire* proceedings constituted a closure of the proceedings pursuant to *Press–Enterprise,* requiring the trial court to provide adequate notice, a hearing and factual findings placed on the record. Furthermore, the *Antar* court concluded that the First Amendment right of access applied equally to transcripts of court proceedings. *Antar,* 38 F.3d at 1361.

¶ 26 The instant case is distinguishable from *Antar,* as it did not involve the closure of court proceedings. Unlike *Antar,* the Intervenors and all other media had access to the courtroom and the transcripts during the entire court proceedings. Furthermore, the *Long* trial court did not seal the *voir dire* transcripts. Finally, the *Long* trial court did not attempt to place any restrictions upon the media.

¶ 27 Upon our review of *Antar,* we do not find support for the Intervenors' contention that the First Amendment provides a qualified right of access, beyond access to the court proceedings, to lists of empaneled jurors' names and addresses. The Third Circuit Court of Appeals in *Antar* did not extend the qualified right of access to court proceedings to encompass lists containing jurors' names and addresses. Rather, the *Antar* court expanded the qualified right of access to include not only

physical access to the proceedings, but also access to the transcripts of the proceedings. In doing so, the Third Circuit Court of Appeals stated, "It is access to the content of the proceeding—whether in person, or via some form of documentation—that matters." *Id.* at 1360. In the instant case, the Intervenors do not seek access to the content of the *voir dire* proceeding, and in fact had access to the content. Consequently, the *Antar* holding does not compel the release of the names and addresses of empaneled jurors, where that information was not provided in open court during the *voir dire* proceeding.[12]

¶ 28 We note that:

(t)he Constitution does not ... require government to accord the press special access to information not shared by members of the public generally.... It is one thing to say that a journalist is free to seek out sources of information not available to members of the general public, that he is entitled to some constitutional protection of the confidentiality of such sources ... and that government cannot restrain the publication of news emanating from such sources.... It is quite another thing to suggest that the Constitution imposes upon government the affirmative duty to make available to journalists sources of information not available to members of the public generally. That proposition finds no support in the words of the Constitution or in any decision of this Court.

*Pell v. Procunier,* 417 U.S. 817, 834–35, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974) (citations omitted).[13]

---

**12.** In reaching the same result as in *Antar,* the First Circuit Court of Appeals in *In Re Globe Newspaper Co.* specifically stated that the court was not addressing the constitutionality of plans that routinely keep the names of jurors confidential, such as the administrative Order of Westmoreland Court of Common

Pleas at issue in this case. *Id.* 920 F.2d 88, 92 n. 5 (1st Cir.1990).

**13.** The Intervenors also cite to *In re Baltimore Sun,* 841 F.2d 74 (4th Cir.1988), in order to support their argument that the trial court is required under the First Amendment right of access to provide the media with the names

¶ 29 Moreover, we observe that a right of access is not absolute. The Pennsylvania Supreme Court has explained:

A trial judge may impose restrictions to maintain the integrity of the proceedings in the courtroom. The United States Supreme Court held in both *Press–Enterprise, id.,* and *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. at 581, n. 18, 100 S.Ct. at 2830, that a trial judge may "in the interest of the fair administration of justice, impose reasonable limitations on access to a trial."

*Berrigan,* 501 A.2d at 232. In fact, the trial court has an affirmative duty to limit outside influences upon jurors. *See Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). The United States Supreme Court held in *Sheppard* that the trial judge's failure to protect the defendant from prejudicial publicity, and to control disruptive influences in the courtroom, warranted the reversal of a highly publicized murder conviction. The Supreme Court specifically recognized that:

[U]nfair and prejudicial news comment on pending trials has become increasingly prevalent.... Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused.... If publicity during the proceedings threatens the fairness of the trial, a new trial should be ordered. But we must remember that reversals are but palliatives; the cure lies in those remedial measures that will prevent the prejudice at its inception. The courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences. Neither prosecutors, counsel for defense, the accused, witnesses, court staff nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function.

*Id.* at 362–63, 86 S.Ct. 1507.

¶ 30 The Supreme Court's concerns enunciated in *Sheppard* hold true today. In a recent high-profile criminal trial, the trial court was forced to declare a mistrial after a juror, whose name was publicly released by the media, received threatening letters from persons who were angry that she might hold out for the defense. *See* Barbara Ross & Corky Siemaszco, Tyco Trial a $12M Fiasco: Threatening Letter to Juror Spurs Mistrial—Post Scolded for Naming Her, N.Y. DAILY NEWS (Apr. 3, 2004), at http/www.nydailynews.com/new s/crime_file/v–pfriendly/story/180143p–156543c.html.

¶ 31 Having concluded that the Intervenors are not entitled to the names and addresses of the *Long* jurors as a constitutional right, we must now determine whether a common law right of access exists. In support of their position, the Intervenors argue that the lists containing empaneled jurors' names and addresses are public documents to which the media should be afforded access.

¶ 32 The Pennsylvania Supreme Court has acknowledged the existence of a common law right to examine certain judicial

and addresses of the empaneled jurors. However, the Fourth Circuit Court of Appeals explicitly based their decision upon the fact that in early America "everyone knew everyone" on the jury list and utilized that historical fact to require the trial court to release the jurors' names and addresses. *Id.,* 841 F.2d at

76. Moreover, the Fourth Circuit Court of Appeals explicitly stated that its holding in that case was not based upon the First Amendment, *Id.,* 841 F.2d at 76 n. 4. Consequently, *In re Baltimore Sun* does not provide authority for the Intervenors' position.

records. *See Commonwealth v. Fenstermaker,* 515 Pa. 501, 530 A.2d 414 (1987) (setting forth a common law right of access to affidavits in support of search warrants). "The fundamental question ... is 'whether the documents sought to be disclosed constitute public judicial documents, for not all writings connected with judicial proceedings constitute public judicial documents.'" *Commonwealth v. Crawford,* 789 A.2d 266, 270 (Pa.Super.2001) (citing *Fenstermaker,* 530 A.2d at 418).

¶ 33 This Court has found no case law addressing whether a list containing empaneled jurors' names and addresses is a public judicial document subject to a common law right of access. However, we are guided by the clear policy of protection for jurors' privacy expressed by the Pennsylvania Supreme Court in Pennsylvania Rule of Criminal Procedure 632, which requires that "[t]he information provided by the jurors on the [juror] questionnaires shall be confidential and limited to use for the purpose of jury selection only." Pa. R.Crim.P. 632(B). The only exception to this rule that the Supreme Court has created is "disclosures made during *voir dire.*" *Id.*

¶ 34 The Superior Court has previously analyzed the issue of what documents may be considered a public judicial document subject to the common law presumption of openness. In *Crawford,* 789 A.2d 266, a local newspaper sought access to a brief filed by the Commonwealth regarding sentencing issues. The newspaper argued that it was entitled to the brief as a judicial document pursuant to the common law right of access. A panel of this Court concluded that the brief was not a judicial document to which the presumption of openness attached. In reaching this conclusion, this Court explained:

Our Supreme Court's decision in *Fenstermaker* provides important insight into determining what documents, in a criminal trial, the media have a right to inspect. In that case, the media defendants sought access to affidavits of probable cause supporting the issuance of arrest warrants. The Court noted that documents such as probable cause affidavits filed with magistrates are "judicial documents" since magistrates are integral to this Commonwealth's unified judicial system. *Id.* at 418. Moreover, the Court concluded that the [probable cause affidavits] are "clearly judicial in character" since the information contained therein is critical to a magistrate's determination of whether probable cause to arrest exists. *Id.* The Court also found significant the fact that probable cause affidavits are eventually filed with the trial court and become part of the permanent record. *Id.* Thus, the Supreme Court held that "the affidavits in question cannot be regarded as *private documents,* but rather must be taken to be part of the official public case record." *Id.* at 419.

Conversely, in the present case, Appellants sought access to a Commonwealth brief that was presented only to the judge and defense counsel. It was not docketed, formally filed with the court, or required by any rule of criminal procedure. Indeed, it is not part of the certified record on appeal. Although we agree that the trial court may have reviewed it in determining whether Crawford could be sentenced to death, ultimately the reasoning for any decision is contained in the trial court's decision. Thus, we conclude that [the Commonwealth brief] was not a public record.

*Crawford,* 789 A.2d at 271.

¶ 35 Based upon the rationale discussed in *Crawford,* we conclude that the list of jurors' names and addresses is not a judicial document to which the common

law presumption of openness attaches. A list containing the names and addresses of empaneled jurors is not part of the public record or required by any rule of criminal procedure to be made public in the instant case. Furthermore, these lists are not part of the certified record on appeal. Finally, this information is not of the type upon which the decision in the case was based.

¶ 36 Upon consideration of existing case law, as well as the significant concerns of juror privacy, we conclude that no common law right of access to jurors' names and addresses has heretofore been created, and we decline to do so now.

¶ 37 Order affirmed.