COMMONWEALTH of Pennsylvania, Appellant

v.

**Jamie Lynn UPSHUR.**

**WPXI, Inc., Intervenor–Appellee.**

Superior Court of Pennsylvania.

Argued March 29, 2005.

Filed Aug. 22, 2005.

Michael W. Streily, Deputy District Attorney, Pittsburgh, and Kevin F. McCarthy, Assistant District Attorney, Pittsburgh, for Commonwealth, appellant.

Walter P. DeForest III, Pittsburgh, for WPXI, Intervenor.

Before: HUDOCK, POPOVICH, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 In this case we consider whether the electronic media enjoys either a common law or constitutional right of access, before trial, to a copy of an audiotape played during a preliminary hearing where the Commonwealth introduced the audiotape as part of its *prima facie* case. On appeal, the Commonwealth argues that the trial court abused its discretion when it found that a local television station's interest in obtaining the audiotape was greater than the Commonwealth's interest in prosecuting the case and protecting the defendant's right to a fair trial. We conclude that on the facts presented here, the audiotape at issue was not a public judicial document at the point in the proceedings where the demand was made for access. We further conclude that in this case, the media did not have a constitutional right to access and record the audiotape. Accordingly, we reverse the order granting the television station access to the audiotape for purposes of recording it and presumably broadcasting the contents before trial.

¶ 2 The audiotape at issue in this case was played during Jamie Lynn Upshur's preliminary hearing. Upshur was charged with two counts of criminal homicide, two counts of homicide by vehicle, three counts of aggravated assault, two counts of reckless endangerment and one count each of simple assault, speeding, and reckless driving. The Commonwealth played the audiotape at the preliminary hearing before District Justice Charles McLaughlin as part of its presentation of its *prima facie* case against Upshur. The audiotape is a recording of a conversation between Upshur, Timira Brown, one of the alleged victims, and Brown's boyfriend. Upshur allegedly made threatening remarks to Brown during the course of the call. Brown initiated the call at the insistence of her boyfriend, who was incarcerated in the

Allegheny County Jail. Pursuant to Jail policy, the Jail records all calls to or from inmates, with a warning at the beginning of the call, advising the recipient that the call is being recorded. Because Brown initiated the call, Upshur may not have known that the call was being recorded.

¶ 3 The Intervenor/Appellee, WPXI, Inc. ("WPXI"), was present at the preliminary hearing when the tape was played and filed a motion to intervene and obtain access to the audiotape. District Justice McLaughlin held that he was without authority to act on the motion, and denied the request. WPXI then filed a motion to intervene and obtain access to the audiotape in the Court of Common Pleas. That court held that the audiotape was a public judicial document and granted WPXI's motion to obtain access of the audiotape. The Commonwealth then took this timely appeal.

¶ 4 On appeal, the Commonwealth raises one issue:

Whether the court abused its discretion in ruling that WPXI's interest in obtaining the Commonwealth's audio tape that was played during the preliminary hearing in the case of *Commonwealth v. Jamie Upshur* outweighed the Commonwealth's interest in both prosecuting the case and protecting the defendant's rights to a fair trial.

Brief for Appellant at 4.

¶ 5 A trial court's decision regarding access to judicial documents is within the sound discretion of the trial court. *See Commonwealth v. Fenstermaker*, 515 Pa. 501, 530 A.2d 414, 420 (1987). We will reverse on appeal if we find an abuse of that discretion. *See Commonwealth v. Long*, 871 A.2d 1262, 1268 (Pa.Super.2005). An abuse of discretion occurs "when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was

motivated by partiality, prejudice, bias, or ill will." *Harman ex rel. Harman v. Borah*, 562 Pa. 455, 756 A.2d 1116, 1123 (2000) (citing *Coker v. S.M. Flickinger Company, Inc.*, 533 Pa. 441, 625 A.2d 1181, 1184–85 (1993)). "Judicial discretion requires action in conformity with law based on the facts and circumstances before the trial court after hearing and consideration." *Gutteridge v. A.P. Servs.*, 804 A.2d 643, 651 (Pa.Super.2002).

¶ 6 The threshold inquiry when determining whether the public or press should be given access to this audiotape is whether it is a public judicial document. As our Supreme Court held,

> [t]he *threshold inquiry* in a case such as this where a common law right of access is asserted is whether the documents sought to be disclosed constitute public judicial documents, for not all writings connected with judicial proceedings constitute public judicial documents.

*Commonwealth v. Fenstermaker*, 515 Pa. 501, 530 A.2d 414, 418 (1987) (emphasis added). *See also Commonwealth v. Crawford*, 789 A.2d 266, 270 (Pa.Super.2001) (noting that "[t]he fundamental question . . . is 'whether the documents sought to be disclosed constitute public judicial documents, for not all writings connected with judicial proceedings constitute public judicial documents' ").

¶ 7 The Pennsylvania Supreme Court's decision in *Fenstermaker*, which analyzed the right of the press to access arrest warrant affidavits after an arrest has been made, guides the analysis of WPXI's right to record the audiotape. In *Fenstermaker*, the Court noted that there is a "tradition of keeping proceedings and records of the criminal justice system open to public observation . . .". 530 A.2d at 418. This tradition, however, does not provide an unfettered right of access to all judicial documents or evidence. *See id.*

¶ 8 Despite the importance of this threshold inquiry, the trial court does not appear to have given careful thought or analysis to the status of the audiotape. Indeed, in its three page opinion on the matter, the trial court did not set forth its analysis and reasoning behind its conclusion that the audiotape was a public judicial document. Trial Court Opinion, 4/1/04. The inquiry into whether the audiotape is a public judicial document, with the attending common-law right of access, or simply a judicial document, with no such right of access, should have guided the trial court's analysis. Accordingly, we begin with that analysis.

¶ 9 The audiotape was played at a preliminary hearing in which the Commonwealth presented evidence to the magistrate for purposes of determining whether the Commonwealth had sufficient evidence to establish a *prima facie* case that the accused committed a crime. *See* Pa. R.Crim.P. 542, 543. The audiotape was not entered into evidence, it was not filed with the court, and did not otherwise become part of the record in this case.

¶ 10 The *Fenstermaker* Court set forth a number of factors the trial court should have taken into account when determining, in this case, whether the audiotape constituted a public judicial document, including whether the document was entered into evidence and certain policy considerations in favor of public inspection of arrest warrants. The Court elaborated these points of policy as follows:

> [P]ublic inspection of arrest warrant affidavits would serve to discourage perjury in such affidavits, would enhance the performance of police and prosecutors by encouraging them to establish sufficient cause before an affidavit is filed, would act as a public check on discretion of issuing authorities thus discouraging

erroneous decisions and decisions based on partiality, and would promote the public perception of fairness in the arrest warrant process.

*Fenstermaker,* 530 A.2d at 418.

¶ 11 None of these policy concerns are present in this case. Allowing WPXI access to the audiotape to record it would not discourage perjury or enhance the performance of police and prosecutors; nor would it promote the public perception of fairness or openness in the courts. Indeed, there are questions regarding the admissibility of the tape, the most significant perhaps being whether the interception of the threats violated the Pennsylvania Wiretap Act, 18 Pa.C.S. Section 5701. In a situation such as the one before this Court, a finding that the audiotape is not a public judicial document prevents the broadcast and dissemination of highly inflammatory and possibly prejudicial information until after a court has ruled on its admissibility.

¶ 12 To the extent that WPXI argues that there is no distinction between the release of the possibly inadmissible information in the form of an audiotape or a transcript, we find this argument unsupportable. If WPXI were to repeatedly broadcast the audiotape, which the Commonwealth has characterized as "vivid, powerful and potentially inflammatory," this will likely have a greater impact on the public than reading the transcript of the call. Brief for Appellant at 13. As the Commonwealth argued, "it is difficult to believe that anyone hearing these threats, in the defendant's own voice, with all of its inflection and tone, outside of the trial proceeding, without the protections afforded by the rules of evidence, could not form a fixed bias against the defendant." *Id.* Indeed, the fact that WPXI was present when the tape was played and could have requested a transcript of the proceeding, but instead insisted upon a copy of the tape is indicative of the sensationalistic value of the audiotape.

¶ 13 In continuing its analysis, the Court in *Fenstermaker* looked to the nature of the document to determine whether it was a public or private judicial document and specifically stated, "it is significant to note that arrest warrant affidavits are 'filed' to become a part of the permanent record of the case, and as filed documents, their 'public' character is enhanced." *Fenstermaker,* 530 A.2d at 418. The audiotape in this case was not filed with the magistrate, nor was it, at any point, officially entered into evidence. This factor weighs in favor of a finding that the audiotape is not a public judicial document. *See Crawford,* 789 A.2d at 271 (noting that a brief that was not docketed, not formally filed with the court, not required by a rule of criminal procedure, and not part of the record on appeal was not a public judicial document); *United States v. Hernandez,* 124 F.Supp.2d 698, 704–05 (S.D.Fla.2000) (refusing to allow media access to translation of document until that translation was admitted into the record).

¶ 14 In arguing that it should have access to the audiotape for purposes of recording it, WPXI relies heavily upon two Third Circuit opinions, which are not binding upon this Court. *See Werner v. Plater–Zyberk,* 799 A.2d 776, 782 (Pa.Super.2002) *appeal denied,* 569 Pa. 722, 806 A.2d 862 (2002). ("[A]bsent a United States Supreme Court pronouncement, the decisions of federal courts are not binding on Pennsylvania state courts, even when a federal question is involved."). The two decisions upon which WPXI relies, *United States v. Criden,* 648 F.2d 814 (3d. Cir. 1981) and *United States v. Martin,* 746 F.2d 964 (3d. Cir.1984), are factually distinct and do not provide significant support for WPXI's arguments.

¶ 15 As a preliminary matter, both *Criden* and *Martin* involved issues of "extraordinary public interest." *Martin,* 746 F.2d at 969. Namely, *Criden* involved the indictment of a number of local, state and federal public officials that were tried for bribery and related offenses, *Criden,* 648 F.2d at 815, and *Martin,* involved officers of the Philadelphia police department that were indicted on charges of conspiracy, racketeering and extortion. *Martin,* 746 F.2d at 966. Unlike in *Martin* and *Criden,* there is no such compelling public interest that would be served by allowing WPXI access to the audiotape of Upshur's alleged threats. Indeed, Upshur is not a public servant; she is simply a woman charged with a number of serious crimes.

¶ 16 We also note that the tapes at issue in *Criden* were admitted into evidence and played to the jury in open court. *See Criden,* 648 F.2d at 815. Although the court in *Martin* found the question of whether the tape was admitted into evidence was not dispositive of its status as public or non-public, the court found that was a factor that could be considered. *Martin,* 746 F.2d at 969. The *Martin* Court ultimately found that audiotapes were public judicial documents despite the fact that they had not been officially entered into evidence. However, the audiotape in *Martin* was played during trial, before the jury, with each jury member wearing head phones to assist in hearing the audiotape, and the jury was given a transcript of the tape. *See id.* at 966. This is distinct from the manner in which the audiotape was played in this case— before a magistrate, during a preliminary hearing, before trial.

¶ 17 To the extent that WPXI argues that the tape was "evidence admitted at a judicial proceeding" when it was played before the magistrate, we disagree. The tape was not filed with the court, nor did a court rule on its admissibility. *See Leucadia, Inc. v. Applied Extrusion Technologies, Inc.,* 998 F.2d 157, 161–62 (3d Cir. 1993) (noting that "[n]umerous other courts have also recognized ... that the filing of a document gives rise to a presumptive right of public access"). *See also Commonwealth v. Espola,* 9 Pa. D. & C.4th 12, 15 (Pa.Com.Pl.1990) (aff'd 428 Pa.Super. 635, 627 A.2d 201 (1993) (table) (finding that "evidence does not become 'filed' or part of the permanent record until it is admitted into evidence at the court of common pleas level at the time of trial")).

¶ 18 As a matter of policy, we disagree with the trial court that the audiotape at issue in this case is a public judicial document, particularly when no court has ruled on the admissibility of the tape. If the tape were ultimately found inadmissible, the dangers of broad publication may outweigh any benefits. *See Martin,* 746 F.2d at 969–71. Considering that the audiotape in this case is highly inflammatory, the possible prejudice that could result from its publication weighs in favor of its non-release. Indeed, according to the *Martin* court "the most important factor" that the district court considered was the effect that release of the requested materials would have on the subsequent related proceedings, and specifically, "the prospects for impaneling a fair and impartial jury for the trial of the... defendants." *Id.* at 969. The court specifically noted that none of the participants in the tape were awaiting trial and that the relevance of the requested tapes as to the guilt or innocence of the remaining defendants is unclear. *See id.* at 969–71.

¶ 19 In this case, where the materials were requested before the case against Upshur had gone to trial, and before Upshur's guilt or innocence had been adjudicated, the potential impact of the audio-

tapes cannot be overstated. Further, the audiotape in this case, as distinguished from that in *Martin*, is certainly relevant to Upshur's guilt or innocence because in the audiotape, Upshur makes threatening statements towards one of her alleged victims.

¶ 20 Finally, we note that it is not clear, based upon the language in *Fenstermaker*, that the Supreme Court of Pennsylvania has adopted the strong presumption of access which exists in both *Criden* and *Martin*. *See Fenstermaker*, 530 A.2d at 418 (quoting *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 602, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978)) (holding that there "is a presumption—however gauged—in favor of public access to judicial records'"). Indeed, the Court in *Fenstermaker* relies heavily upon the Supreme Court of the United States' decision in *Warner Communications*, which does not include strong presumption language.

¶ 21 For all of the foregoing reasons, the trial court abused its discretion in finding that the audiotape was a public judicial document and that WPXI had a common-law right to copy the audiotape at issue in this case.

■ ¶ 22 Because we hold that WPXI does not have a common-law right to access the audiotape played at the hearing, we must now engage in a constitutional analysis to determine if WPXI has a right under either the First Amendment of the United States Constitution or Article I, Section II of the Pennsylvania Constitution. *See Commonwealth v. Long*, 871 A.2d 1262, 1274 (Pa.Super.2005). Because the Pennsylvania Supreme Court has held that Article I, Section II provides no greater right to an open trial than the United States Constitution, we will proceed with our analysis pursuant to the United States Constitution. *See id.* at

1268, n. 7 (citing *Commonwealth v. Hayes*, 489 Pa. 419, 414 A.2d 318, 322 (1980)).

■ ¶ 23 In *Nixon v. Warner Communications*, 435 U.S. 589, 609, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978), the Supreme Court of the United States found that the First Amendment requires only that the press have the same access to a trial as does the public. The First Amendment provides the media with the right to publicize what it has seen and heard in a court room; however, it does not require the court to provide the media with documents or tapes that are otherwise not available to the general public. *See id.* In this case, none of the judicial proceedings were closed to either the media or the public. WPXI was not denied its constitutional right to be present at the trial. As the Fifth Circuit held, "[a]ll that was denied [the media] was the right to play the tapes over their airwaves; that the Constitution does not require." *Belo Broadcasting Corporation v. Clark*, 654 F.2d 423, 427 (5th Cir.1981). Indeed, "[i]f a right to copy the tapes . . . exists, it must come from a source other than the Constitution." *United States v. Beckham*, 789 F.2d 401, 409 (6th Cir.1986) (quoting *Warner Communications*, 435 U.S. at 610, 98 S.Ct. 1306).

¶ 24 Because WPXI was present at the preliminary hearing and had the opportunity to request a copy of the transcript of the audiotape, our decision to deny WPXI access to the audiotape for purposes of recording does not implicate nor offend the First Amendment of the United States Constitution or Article I, Section II of the Pennsylvania Constitution.

¶ 25 For all of the foregoing reasons, we reverse the trial court's Order granting WPXI access to the audiotape for purposes of recording it.

¶ 26 Order REVERSED.

¶ 27 POPOVICH, J., files a Dissenting Opinion.

POPOVICH, J., Dissenting:

¶ 1 I respectfully disagree with the majority's reversal of the trial court's order which granted WPXI access to the audiotape of Upshur's phone call for the purpose of recording it. In its Opinion, the majority makes the distinction between the manner in which WPXI has access to the information contained on the audiotape, in the form of audiotape or transcript, because the audiotape is not part of the record and it would cause pre-trial publicity prejudicial to the case. However, I believe that once the audiotape was played at the preliminary hearing, the contents became part of the record and were revealed to the media and anyone who attended. Because of the public openness of the preliminary hearing, I would agree with the trial court that WPXI should be granted access to the audiotape.

¶ 2 The United States Supreme Court has held that the First and Fourteenth Amendments to the United States Constitution protect the right of the press and the public to attend criminal trial proceedings. See Press–Enterprise Co. v. Superior Court of Cal., 464 U.S. 501, 508, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984); see also Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 606, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); Accord Commonwealth v. Fenstermaker, 515 Pa. 501, 504, 530 A.2d 414, 416 (1987). The tradition of keeping proceedings and records of the criminal justice system open to public observation is based upon the First Amendment of the Constitution of the United States and upon Article I, sections 9 and 11 of the Pennsylvania Constitution. Id., at 506, 530 A.2d at 417. "Article I, section 9 provides, 'In all criminal prosecutions the accused hath a right to . . . a speedy public trial . . . ,' and Article I, section 11 states, 'All courts shall be open.'" Id., at 506, 530 A.2d at 417. We have held that the United States Constitution and Pennsylvania Constitution extend this right of access to preliminary hearings. See Commonwealth v. Murray, 348 Pa.Super. 439, 502 A.2d 624, 626 (1985).

¶ 3 A defendant may make a stenographic record of a preliminary hearing. Pa.R.Crim.P. 542(C)(5). Further, a defendant may make notes himself, or he may make a mechanical or electronic recording of the preliminary hearing. Id. Considering the public's and the media's right of access to preliminary hearings, WPXI could also have taken notes and have obtained a copy of the stenographic record. The majority notes that WPXI could have requested a transcript of the preliminary hearing. Majority opinion, at 503. In this instance, I also would further WPXI's access to record the preliminary hearing in a manner consistent with the defendant's right to make a record pursuant to Pa. R.Crim.P. 542(C)(5). As I would have found that WPXI could have recorded the preliminary hearing with its own recording device, I believe that WPXI could have access to the audiotape to make a copy of the phone call that was played at the preliminary hearing. Therefore, I would affirm the trial court's grant of access to WPXI for the purpose of recording the audiotape.

¶ 4 I also disagree that granting WPXI access to the audiotape would subject Upshur to greater public scrutiny and, thus, sensationalize the case. With respect to Sixth Amendment considerations, in the usual case, pre-trial publicity does not automatically render a fair trial impossible. Fenstermaker, at 513, 530 A.2d at 420 (citation omitted). Moreover, one who claims a denial of a fair trial because of pre-trial publicity must show actual prejudice in the empanelling of the jury or show that the pre-trial publicity was so pervasive or inflammatory such that prejudice may be presumed. Commonwealth v. Wright, 865 A.2d 894, 911 (Pa.Super.2004)

(citation omitted). I would be reluctant to declare, based solely on the Commonwealth's characterization of the audiotape as "vivid, powerful and potentially inflammatory," that the release of the audiotape will cause Upshur to have an unfair trial even before the empanelment of the jury and the commencement of trial. Thus, I would conclude that permitting WPXI to record the audiotape would not be so prejudicial as to prohibit access to the audiotape.

¶ 5 Because I would find that WPXI had a right of access to the audiotape for the purpose of recording it and that the release of the audiotape would not prejudice the Commonwealth's case, I would grant WPXI access to the audiotape of the phone call played at the preliminary hearing for the purpose of recording it. I do not believe that WPXI's access to the audiotape should be limited to a transcript. For these reasons, in giving deference to the reasoning of the trial court, I would conclude that it did not abuse its discretion by granting WPXI access to the audiotape of the phone call for the purpose of recording it. Accordingly, I would affirm the order of the trial court.