**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

FILED: March 22, 2006

No. 06-1301

In Re: ASSOCIATED PRESS; CABLE NEWS NETWORK
LP, LLP; THE HEARST CORPORATION; NBC
UNIVERSAL, INCORPORATED; THE NEW YORK TIMES
COMPANY; WP COMPANY LLC, d/b/a The Washington
Post; USA TODAY; THE STAR TRIBUNE COMPANY; THE
REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS,

Petitioners.

**ORDER**

Petitioners, several media companies and a nonprofit organization, have filed a petition for a writ of mandamus seeking contemporaneous access to documentary exhibits admitted into evidence in the course of the sentencing phase trial of Zacarias Moussaoui. Petitioners also seek access to transcripts of bench conferences conducted during the course of the trial. For the reasons set forth below, we grant the petition in part and deny it in part.

I.

On September 11, 2001, members of the terrorist organization al Qaeda hijacked three passenger aircraft and crashed them into the Pentagon and the World Trade Center towers in New York. A

fourth plane, apparently destined for the United States Capitol, crashed in Pennsylvania after passengers wrested control from the hijackers. The attacks resulted in the deaths of over 3,000 men, women, and children.

Moussaoui is the only individual thus far criminally charged with involvement in the attacks. In April 2005, Moussaoui pleaded guilty to multiple charges in connection with the attacks, several of which carry the death penalty as a potential sentence. Accordingly, on March 6, a sentencing hearing began before a jury for the determination of the appropriate penalty. Prior to the commencement of the hearing, on February 14, the district court entered two orders. A written order provided that "none of the exhibits entered into evidence will be made available for pubic review until the trial proceedings are completed, at which time requests for these materials will be considered." United States v. Moussaoui, No. 1:01cf455, at 3 (E.D. Va. Feb. 14, 2006) (order denying access to exhibits entered into evidence) [hereinafter "Feb. 14 Order"]. During a pretrial conference, the court ordered that transcripts of bench conferences would be sealed until the conclusion of the trial, at which time they would be unsealed unless the transcript contained "some sensitive matter that couldn't be public." Transcript of hearing at 16, United States v. Moussaoui, No. 1:01cr455 (E.D. Va. Feb. 14, 2006).

2

Petitioners thereafter moved to intervene and for contemporaneous access to transcripts of bench conferences and to documentary exhibits admitted at trial. The documentary exhibits to which Petitioners seek access include not only printed material (such as documents, maps, and photographs), but also videotapes that have been shown to the jury in open court but not transcribed. The Government and Moussaoui filed oppositions to the motion for access. The district court granted the motion to intervene and initially scheduled a hearing on the motion for access for February 24, but it subsequently cancelled the hearing.

On March 10, Petitioners filed this petition for a writ of mandamus, asserting a First Amendment right to contemporaneous access to documentary exhibits and transcripts of bench conferences--the same materials to which Petitioners sought access in the district court. Later that day, the district court entered an order denying the motion for access that had been filed in that court. With respect to the documentary exhibits, the court ruled that contemporaneous access was "logistically impossible," citing the "extraordinary" number of exhibits and associated difficulties, including the Government's exhibit numbering system and "the potential that some evidence will only be partially declassified." United States v. Moussaoui, No. 1:01cr455, at 2 (Mar. 10, 2006) (order denying motion for access to certain portions of the record) [hereinafter "March 10 Order"]. In addition to logistical

3

difficulties, the court noted a "significant" potential for "undermining the integrity of the proceeding" if jurors were exposed to evidence through the media before it was presented in court. Id. at 2-3. This concern related particularly to a "thick set of stipulations," id. at 3, that had been fully admitted into evidence but only partially published to the jury.

The court also denied access to transcripts of bench conferences, reasoning that "neither the media nor the public has a clearly established right under either the common law or the First Amendment" to such transcripts. Id. at 4. Indeed, the court observed, contemporaneous public access to transcripts of bench conferences "would undermine the very reason for having such conferences." Id. at 3. The court rejected Petitioners' proposed compromise--whereby transcripts would be unsealed after a certain amount of time unless a party presented a reason not to unseal-- stating that "to expect either the Court or counsel in the midst of an extremely complicated case to review transcripts of bench conferences to decide if they can be publicly disclosed presents an unreasonable and inappropriate burden." Id. at 4.

II.

There is no doubt that the First Amendment guarantees the public and the media the right to attend criminal trials. See Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 603 (1982); United States v. Soussoudis (In re Washington Post Co.), 807 F.2d

4

383, 388 (4th Cir. 1986). That right is not in question here. What Petitioners claim is the additional right to contemporaneous access to documentary exhibits and transcripts of bench conferences. The question of whether Petitioners' claimed right of access exists is a legal one, and hence is subject to de novo review, see United States v. Bakker (In re Charlotte Observer (Div. of Knight Publ'g Co.)), 882 F.2d 850, 854 (4th Cir. 1989), while the restrictions on access fashioned by the district court are reviewed for abuse of discretion, see Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 599 (1978).

## A. Notice and an Opportunity To Be Heard

Petitioners first contend that the oral and written orders of February 14 are facially invalid because they were issued without prior notice and an opportunity to be heard. We conclude that any defects that existed at the time of the February 14 orders have been cured by subsequent proceedings.

It is well established that "representatives of the press and general public must be given an opportunity to be heard on the question of their exclusion" from a judicial proceeding. In re Knight Publ'g Co., 743 F.2d 231, 234 (4th Cir. 1984) (internal quotation marks omitted). The failure to provide notice and an opportunity to object renders a closure of proceedings invalid. See In re S.C. Press Ass'n, 946 F.2d 1037, 1039-40 (4th Cir. 1991). Although it appears that members of the press and the public were

5

not notified, and did not have an opportunity to be heard, prior to the entry of the February 14 orders, there is no question that Petitioners' objections to the denial of access have been aired before the district court and addressed in the March 10 Order. See id. at 1040 ("In re Knight requires only that the press and public be given notice and an opportunity to object to closure."). We therefore conclude that Petitioners have received, albeit belatedly, the process to which they are entitled.

## B.  Documentary Exhibits

Petitioners contend that they are entitled to same-day access to documentary exhibits--a category which includes written documents, videotapes, and photographs--that are admitted into evidence. The district court based its refusal to provide such access on the difficulty of managing the extraordinary quantity of evidence involved, the complexity of the exhibits, and the concern that the jury would be tainted "if information not yet shown to the jury is publicly available and seen by a juror." March 10 Order, at 3. This latter concern focused particularly on the stipulations, all of which had been admitted but only some of which had been read to the jury.

It is undisputed that there is a right of access to judicial records filed in connection with criminal proceedings. Although the Supreme Court has stated no more than that this right is grounded in the common law, see Warner Commc'ns, 435 U.S. at 598-

6

99, the Fourth Circuit has explicitly identified the right as arising from the First Amendment, see In re Time Inc., 182 F.3d 270, 271 (4th Cir. 1999). However, this right is a qualified one and may be limited by a compelling interest in preserving the fairness of the trial, provided the restriction on access is narrowly tailored. See Press-Enterprise Co. v. Superior Court (Press-Enterprise II), 478 U.S. 1, 13-14 (1986).

We have little difficulty concluding that the district court did not abuse its discretion in refusing to provide access to items that have been admitted into evidence but that have not yet been published to the jury, or that have been published only in part. We therefore deny the petition for a writ of mandamus to the extent that Petitioners seek access to any documentary exhibit that falls into this category, i.e., any exhibit that has been admitted into evidence but not yet fully published to the jury. Our denial includes items that have been partially published to the jury; we agree with the district court that the administrative burdens, to the court and to the parties, associated with requiring piecemeal access to partially admitted exhibits justify a refusal to provide access to admitted exhibits until they have been fully published to the jury.

A special note is required as to the rather puzzling category of exhibits that are "declassified only for the limited purpose of being discussed in court and shown to the jury without unrestricted

7

public access." Feb. 14 Order, at 2. To the extent that such exhibits are published to the jury in open court, such that members of the public are apprised of the contents of the exhibit (for example, in the case of a declassified document that is read aloud to the jury), we conclude that Petitioners are entitled to access to the exhibit under the terms outlined below. However, to the extent the contents of such an exhibit are concealed from the public for reasons of national security, we conclude that Petitioners are not entitled to access which has not been granted to the public at large.

As for documentary exhibits that have been admitted into evidence and fully published to the jury, we conclude that the district court abused its discretion in denying access. "Once ... evidence has become known to the members of the public ... through their attendance at a public session of court, it would take the most extraordinary circumstances to justify restrictions on the opportunity of those not physically in attendance at the courtroom to see and hear the evidence, when it is in a form that readily permits sight and sound reproduction." United States v. Myers (In re Nat'l Broad. Co.), 635 F.2d 945, 952 (2d Cir. 1980). As noted above, the district court identified two concerns in disallowing any contemporaneous access to exhibits: juror taint and administrative difficulties. The concern for juror taint is not well taken regarding exhibits that have been fully published to the

8

jury because it is unlikely that simply seeing the evidence again through a media publication will endanger Moussaoui's right to a fair trial. See id. at 953. Moreover, the district court has repeatedly instructed the jurors not to expose themselves to media coverage of the trial; daily questioning by the court demonstrates that the jurors have obeyed this instruction. See Valley Broad. Co. v. United States D. Ct., 798 F.2d 1289, 1297 (9th Cir. 1986) (rejecting, as speculative, supposition that jurors might disregard instructions not to watch media coverage of trial and possibility of incremental prejudice resulting from viewing videotaped evidence a second time).

The administrative concerns of the district court are also insufficient to justify a complete denial of access. In Valley Broadcasting, the Ninth Circuit concluded that administrative burdens were not sufficient to override the common law right of access to judicial records but acknowledged that "cases could arise in which the administrative burdens of access are so substantial that they justify denial [of access] on that basis alone." Id. at 1295 & n.8; cf. Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988) ("The common law does not afford as much substantive protection to the interests of the press and the public as does the First Amendment."). We do not doubt that the administrative burdens facing the district court are enormous. Indeed, Petitioners themselves acknowledge this. However,

9

Petitioners maintain--and we agree--that there are ways to ease the incremental administrative burdens that would arise from accommodating their First Amendment right of access, such as providing access to one copy of an exhibit--either through the parties or through the court--and requiring the media to make additional copies at their own expense. Ultimately, while we are sympathetic to the administrative burdens faced by the district court, we cannot agree that the incremental rise in those burdens that would be caused by providing access justifies the denial of access, until after the completion of trial, to all documentary exhibits that have been admitted into evidence and fully published to the jury. With respect to such exhibits, therefore, we grant the petition for a writ of mandamus and direct the district court to adopt a mechanism that will provide the media with one copy of each documentary exhibit that has been admitted into evidence and fully published to the jury. This copy should be made available as soon as is practically possible, but in no event later than 10:00 a.m. on the day after the exhibit is published to the jury, or, in the case of an exhibit that is published to the jury in parts, after all parts of the exhibit have been published.

## C. Bench Conferences

Petitioners' contention that they are entitled to transcripts of bench conferences before the trial is without merit. The Supreme Court has indicated that the existence of a First Amendment

10

right to observe trial proceedings does not necessarily extend to all parts of a trial. See Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 581 n.18 (1980) (plurality opinion). And, bench conferences traditionally are not open to the public. See Globe Newspaper, 457 U.S. at 609 n.25; see also Richmond Newspapers, 448 U.S. at 598 n.23 (Brennan, J., concurring in the judgment) ("[W]hen engaging in interchanges at the bench, the trial judge is not required to allow public or press intrusion upon the huddle."). Accordingly, courts that have considered the issue have recognized the authority of the district court to exclude the public from bench conferences. See, e.g., United States v. Valenti, 987 F.2d 708, 713-14 (11th Cir. 1993); United States v. Edwards, 823 F.2d 111, 116-17 (5th Cir. 1987). We agree with our sister circuits.

Petitioners maintain, however, that they do have a First Amendment right to review transcripts of bench conferences as part of the transcripts of the proceedings that are published daily. As support for this contention, Petitioners rely on United States v. Smith, 787 F.2d 111, 114-15 (3d Cir. 1986), in which the Third Circuit held that the public has at least a common law right to review transcripts of bench conferences involving evidentiary rulings. However, the Third Circuit in Smith did not rule that the public and press must be provided access to transcripts of bench conferences while a trial is ongoing. See id. at 114. Assuming that there is a constitutional or common law interest in eventual

11

release of transcripts of bench conferences, this right is amply satisfied by prompt post-trial release of transcripts. <u>See</u> <u>Edwards</u>, 823 F.2d at 119. We therefore deny Petitioners' mandamus petition to the extent that they seek contemporaneous or near-contemporaneous access to transcripts of bench conferences.

### III.

For the reasons set forth above, the petition for a writ of mandamus is GRANTED with respect to documentary exhibits that have been admitted into evidence and fully published to the jury. Access should be provided by the district court in the manner provided in Part II.B. of this order or in some other fashion, as long as access is provided within the identified time limitations. In all other respects, the petition is DENIED.

Entered at the direction of Chief Judge Wilkins, with the concurrences of Judge Gregory and Judge Duncan.