924 A.2d 642

**COMMONWEALTH of Pennsylvania**

v.

**Jamie Lynn UPSHUR,**

**Appeal of WPXI, Inc.**

Supreme Court of Pennsylvania.

Argued Sept. 11, 2006.

Resubmitted April 13, 2007.

Decided June 20, 2007.

Walter P. DeForest, III, DeForest Koscelnik Yokitis & Kaplan, Altoona, for WPXI, Inc., appellant.

Kevin Francis McCarthy, Pittsburgh, for the Com. of PA, appellee.

BEFORE: CAPPY, C.J., CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN and FITZGERALD, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

Justice SAYLOR.

Appeal was allowed in this case to determine whether an audiotape played at a preliminary hearing is a public judicial record or document to which the media has a presumptive right of access.

In February 2004, Jamie Lynn Upshur was charged by criminal complaint filed in the Pittsburgh Magistrates Court with multiple offenses, including two counts of criminal homicide, apparently arising out of a collision that involved several vehicles.[1] As part of its *prima facie* case at Ms. Upshur's preliminary hearing before a magistrate district judge, the Commonwealth played an audiotape allegedly containing a recording of Ms. Upshur's voice as she directed threatening statements toward one of the asserted victims, Timira Brown, several months prior to the events giving rise to the criminal

---

1. The record of the underlying criminal case has not been provided with the certified record on appeal, and few allegations of the complaint have been alluded to by the parties.

charges. Reportedly, the conversation was part of a three-way telephone call initiated by Ms. Brown and which included Ms. Brown's boyfriend, who was incarcerated in the Allegheny County Jail. The recording occurred pursuant to the facility's policy, under which all calls to or from inmates are preserved via audiotape. Although parties to phone calls with inmates are advised of the recording when the calls are initiated, Ms. Upshur may not have been aware that the conversation was monitored, as she may have been connected via a third-party line after the issuance of the warning.

A reporter for television station WPXI–TV (owned and operated by Appellant WPXI, Inc.) was present at the preliminary hearing when the audiotape was played. Apparently due to public interest regarding this case, WPXI filed a motion for leave to intervene with the magistrate district judge, seeking access to the audiotape in order to make a copy that could be broadcast.[2] The magistrate, however, did not believe that he was authorized to act on the motion and denied WPXI's request.

WPXI then filed a motion to intervene in the common pleas court, arguing that the public has a right to obtain a copy of a tape recording played in court and that a transcript of that tape would not suffice.[3] The court agreed and issued an order granting WPXI access to a copy of the tape. In a brief opinion that followed, the court explained that there is a presumption of openness that accompanies criminal proceedings. *See Richmond Newspapers Inc. v. Virginia,* 448 U.S.

**2.** This Court has long held that a motion to intervene is an appropriate method for the news media to assert the public right of access to information concerning criminal cases. *See Commonwealth v. Fenstermaker,* 515 Pa. 501, 504 n. 1, 530 A.2d 414, 416 n. 1 (1987); *Capital Cities Media, Inc. v. Toole,* 506 Pa. 12, 22, 483 A.2d 1339, 1344 (1984). This type of intervention has been described as "provisional in nature and for the limited purpose of permitting the intervenor to file a motion, to be considered separately, requesting that access to proceedings or other matters be granted." *Fenstermaker,* 515 Pa. at 504 n. 1, 530 A.2d at 416 n. 1.

**3.** The scope of the right of access for the news media is identical to that of the general public. *See Fenstermaker,* 515 Pa. at 504 n. 1, 530 A.2d at 416 n. 1 (citing *Estes v. Texas,* 381 U.S. 532, 540, 85 S.Ct. 1628, 1631, 14 L.Ed.2d 543 (1965)).

555, 573, 100 S.Ct. 2814, 2825, 65 L.Ed.2d 973 (1980). Further, the court recognized that public access to judicial records was also presumed, *see Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 602, 98 S.Ct. 1306, 1314, 55 L.Ed.2d 570 (1978), and that this Court had determined that public judicial records or documents must be available for inspection and copying unless the party seeking to seal the materials demonstrated compelling reasons to preclude access, *see Commonwealth v. Fenstermaker,* 515 Pa. 501, 513–14, 530 A.2d 414, 420–21 (1987). Applying these principles to the present matter, the court concluded that the audiotape in question was a public judicial record for which the presumption of access had not been overcome and emphasized that the tape had been "played out in the open" during the preliminary hearing. *Commonwealth v. Upshur,* No. 410, March Term 2004, *slip op.* at 3 (C.P. Allegheny Co. April 1, 2004).

On appeal by the Commonwealth, the Superior Court reversed, concluding that the audiotape was not a public judicial record or document because the tape was not part of the record, as it was never entered into evidence or otherwise filed with the court. *See Commonwealth v. Upshur,* 882 A.2d 499, 503 (Pa.Super.2005). Further, the court examined the public policy factors enumerated by this Court in *Fenstermaker,* 515 Pa. at 507–08, 530 A.2d at 417–18, and determined that release of the tape recording would not discourage perjury, enhance the performance of police or prosecutors, or promote the public perception of fairness and openness in the judicial system. Additionally, the court emphasized that there were serious questions as to the admissibility of the recording at trial due to a possible violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. § 5701–5782.[4] Given the likely inflammatory effect of the tape should it be broadcast and the fact that transcripts of the proceedings, including the contents of the recording, were

4. The Wiretapping and Electronic Surveillance Control Act makes it a felony of the third degree to intentionally intercept, use, or disclose the contents of a wire, electronic or oral communication. *See* 18 Pa.C.S. § 5703. However, there are several exceptions, one of which allows State correctional facilities to monitor and record telephone calls made

available, the court determined that access to an audio copy of the tape itself was not mandated.

Judge Popovich dissented, expressing the view that the audiotape became part of the record once it was played at the preliminary hearing. *See Upshur*, 882 A.2d at 506 (Popovich, J., dissenting). Further, Judge Popovich concluded that, since pre-trial publicity does not always render a trial unfair, WPXI should not have been denied access to the recording based solely on the Commonwealth's assertion that broadcast of the tape would be inflammatory.

The Court granted WPXI's Petition for Allowance of Appeal to determine whether an audiotape played at a preliminary hearing is a public judicial record or document to which the common law right of access attaches and, relatedly, whether the common pleas court abused its discretion in granting access in the present matter. As the court did not develop its reasoning with regard to the latter issue in its Rule 1925(a) opinion, however, we remanded the case for preparation of an opinion specifying the rationale, together with any necessary factual findings, supporting the discretionary component of its ruling. In this subsequent opinion, the court explained that access to the tape recording was presumed, as it had been played at the preliminary hearing. To overcome this presumption, the court observed that the Commonwealth must present compelling reasons warranting denial of access to the audiotape. *See Fenstermaker*, 515 Pa. at 514, 530 A.2d at 421. However, because the Commonwealth raised the sole issue of contamination of the jury pool, which could be adequately addressed by *voir dire* or a change of venue, and did not play the tape or offer it as evidence at the hearing, the common pleas court permitted WPXI to obtain a copy of the recording.

■ As a preliminary matter, we note that the determination of whether an item will be considered a public judicial record or document subject to the common law right of access is a question of law, for which the scope of review is plenary.

to or from any inmate, so long as certain conditions are satisfied, including the notification of persons calling into the facility that the call may be monitored or recorded. *See* 18 Pa.C.S. § 5704(13)(iii).

*See Buffalo Township v. Jones*, 571 Pa. 637, 644 n. 4, 813 A.2d 659, 664 n. 4 (2002). However, the trial court's decision regarding access to a particular item will be reviewed for abuse of discretion. *See Fenstermaker*, 515 Pa. at 513, 530 A.2d at 420.

The common law right of access to public judicial records and documents arose from the presumption that judicial proceedings will be open to the public.[5] As the Supreme Court has stated, "[i]t is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon*, 435 U.S. at 591, 98 S.Ct. at 1312 (footnotes omitted). This Court has viewed the common law right of access as compelled by many of the considerations that underlie the presumption of public trials. *See Fenstermaker*, 515 Pa. at 507, 530 A.2d at 417–18. In the case of arrest warrant affidavits, this Court has stated that:

> [F]rom a policy standpoint, public inspection of arrest warrant affidavits would serve to discourage perjury in such affidavits, would enhance the performance of police and prosecutors by encouraging them to establish sufficient cause before an affidavit is filed, would act as a public check on discretion of issuing authorities thus discouraging erroneous decisions and decisions based on partiality, and would promote a public perception of fairness in the arrest warrant process.

*Id.* at 507–08, 530 A.2d at 418. More generally, the public right to review and copy judicial records and documents

---

5. The United States Supreme Court has held that criminal proceedings are presumed to be open to the public and the press under the First Amendment. *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603, 102 S.Ct. 2613, 2618, 73 L.Ed.2d 248 (1982); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 576, 100 S.Ct. 2814, 2827, 65 L.Ed.2d 973 (1980). Similarly, this Court has recognized a presumption of openness stemming from Article I, Sections 9 and 11 of our State Constitution, which provide that an accused has the right to a "speedy, public trial" and that "all courts shall be open." *See Fenstermaker*, 515 Pa. at 506, 530 A.2d at 417; *see also Commonwealth v. Contakos*, 499 Pa. 340, 344, 453 A.2d 578, 580 (1982) (plurality opinion) ("We are mindful ... of our virtually unbroken history of public trials and openness in criminal trials.").

provides an important check on the criminal justice system, ensuring not only the fair execution of justice, but also increasing public confidence and understanding. *See Richmond Newspapers,* 448 U.S. at 572, 100 S.Ct. at 2825 ("People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing.").

However, not all documents and materials utilized during court proceedings are subject to the right of access. The threshold question in any case involving the common law right of access is "whether the documents sought to be disclosed constitute public judicial documents." *Fenstermaker,* 515 Pa. at 508, 530 A.2d at 418. Some items will fit squarely within the category of public judicial records or documents while others will just as clearly be excluded. For example, transcripts of bench conferences held in camera and notes maintained by the prosecutor and defense counsel during trial are not considered public judicial documents. *See id.* at 508, 530 A.2d at 418. Certainly, however, any item that is filed with the court as part of the permanent record of a case and relied on in the course of judicial decision-making will be a public judicial record or document. *See, e.g., Fenstermaker,* 515 Pa. at 510, 530 A.2d at 419 (arrest warrant affidavits filed with a magistrate); *PG Publishing Co. v. Commonwealth,* 532 Pa. 1, 6, 614 A.2d 1106, 1108 (1992) (search warrants and supporting affidavits).

Presently, WPXI argues that there is a common law right of access to the tape recording at issue because it was submitted to a court during a pre-trial proceeding where it formed the basis of a decision as to whether an individual accused of a crime will stand trial. In this regard, WPXI contends that the definition of public judicial records and documents does not encompass only materials within the record or otherwise filed with the court, as that would give the public very little to access and, in the case of preliminary hearings, leave the prosecutor in complete control of which materials the public would be entitled to; she could simply

choose not to file an item with the magistrate district judge or present the document without actually moving for the item's entry into evidence. Furthermore, in WPXI's view, it would elevate form over substance to determine a document or record's status simply on the basis of whether the item contained an official stamp of the word "filed." In these situations, WPXI asserts, a court must look at substance, not semantics. *See, e.g., United States v. Graham,* 257 F.3d 143, 152 (2d Cir.2001) ("Thus, while the defendants are correct that the words 'admitted into evidence' were not used at the hearing, the distinction appears to us to be at most a semantic one, given the presentation of the tapes at the hearing and the district court's reliance on them in making its decision."); *United States v. Criden,* 648 F.2d 814, 828 (3d Cir.1981) ("*Criden I*") ("It would unduly narrow the right of access were it to be confined to evidence properly admitted, since the right is based on the public's interest in seeing and knowing the events which actually transpired.").

In addition, WPXI asserts that, since the audiotape at issue was included in the evidence presented as part of the Commonwealth's *prima facie* case against Ms. Upshur in open court and the magistrate district judge was free to rely on the tape in reaching his decision on whether to hold the charges over for trial, it is both public and judicial in character. *See Fenstermaker,* 515 Pa. at 508–09, 530 A.2d. at 418. WPXI thus views the Commonwealth's argument that the tape was not public because it was not formally filed with the court as raising a distinction without a difference in this case, as everyone attending the preliminary hearing listened to the tape and transcripts of the tape were available upon request.

Moreover, WPXI contends that the policy factors noted above—enhancing the performance of the system, discouraging perjury, bias, and error, and promoting the public perception of fairness—militate in favor of finding that a tape recording played at an open preliminary hearing is a public judicial record or document. Further, WPXI applies the policy concerns underlying the presumption of openness that accompanies pretrial proceedings to the present situation,

including increasing the public's understanding of the criminal process and the importance of preliminary hearings to the criminal justice system.[6] Thus, WPXI maintains that the trial court did not abuse its discretion in finding that the audiotape at issue is a public judicial record or document and that the Commonwealth failed to meet its burden to demonstrate compelling reasons warranting a denial of access.

The Commonwealth, by contrast, asserts that the recording cannot be considered a public judicial record or document, as

---

**6.** The constitutional presumption of openness extends to pretrial proceedings, including preliminary hearings. *See Press–Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 10, 106 S.Ct. 2735, 2741, 92 L.Ed.2d 1 (1986) ("[T]he near uniform practice of state and federal courts has been to conduct preliminary hearings in open court."); *U.S. v. Criden*, 675 F.2d 550, 557 (3d Cir.1982) (*"Criden II"*) ("[T]he public has a first amendment right of access to pretrial suppression, due process, and entrapment hearings."); *accord Commonwealth v. Hayes*, 489 Pa. 419, 437–38, 414 A.2d 318, 327 (1980) (concluding that the right of access to pretrial proceedings may not be foreclosed where another method can fully protect the defendant's right to a fair trial). Preliminary hearings, like other pretrial proceedings, are an important part of the criminal justice process. Evidence presented at preliminary hearings and determinations made at pretrial proceedings may dictate whether a full trial will be held. Indeed, preliminary hearings, though often waived, may at times provide the only opportunity for the public to observe the criminal process because the vast majority of criminal cases are disposed of via pleas. *See* Stephanos Bibas, *Plea Bargaining Outside the Shadow of Trial*, 117 HARV L.REV. 2463, 2466 & n. 9 (2004) (noting that approximately 95 percent of felony convictions in state courts in the year 2000 were resolved by guilty pleas).

Although Madame Justice Baldwin is correct in pointing out in her concurring opinion that *Press–Enterprise* arose out of California, the decision is entirely consistent with this Court's past cases. *See, e.g., Philadelphia Newspapers, Inc. v. Jerome*, 478 Pa. 484, 503, 387 A.2d 425, 434 (1978) (explaining that "the right of access to court proceedings should not be limited for any reason less than the compelling state obligation to protect constitutional rights of criminal defendants and the public interest in the fair, orderly, prompt, and final disposition of criminal proceedings" in addressing limitations on access to pretrial suppression hearings). Further, we find no relevant difference between California and Pennsylvania procedure that would suggest a contrary conclusion concerning openness of a preliminary hearing in this Commonwealth. Indeed, in *Press–Enterprise* the United States Supreme Court referenced *Philadelphia Newspapers*, among numerous decisions from other states, in support of its observation that "[t]he vast majority of States considering the issue have concluded that the same tradition of accessibility that applies to criminal trials applies to preliminary

the audiotape was never filed with the court, entered into evidence, or otherwise made part of the record. According to the Commonwealth, the Superior Court did not solely base its conclusion on the fact that the recording was not formally entered into evidence; the court also analyzed the policy concerns enumerated by this Court, such as promoting the public perception of fairness and discouraging perjury, and concluded that they were not present in this case. *See Upshur*, 882 A.2d at 503 (citing *Fenstermaker*, 515 Pa. at 508, 530 A.2d. at 418). Further, the Commonwealth argues that it would not be in the public interest to allow the media to access exhibits presented at preliminary hearings because doing so would have a chilling effect upon prosecutors, as they would continually need to consider the possibility that pre-trial dissemination of evidence presented solely for the purpose of demonstrating a *prima facie* case would risk the defendant's right to a fair trial.

While the Commonwealth acknowledges that the tape must be released should it be formally admitted into evidence, *see* Brief for Appellee at 12–13, n. 5 (citing *Criden I*, 648 F.2d at 814), it distinguishes the present matter as involving a tape played at a preliminary hearing instead of to a jury during trial. Additionally, the Commonwealth contends that the questionable admissibility of the recording at issue due to a possible violation of the Wiretap Act weighs against granting WPXI access, since each extra-judicial publication of an illegally intercepted conversation constitutes a separate violation. *See* 18 Pa.C.S. § 5703. Thus, the Commonwealth maintains that, even if the tape was subject to the right of access, the trial court abused its discretion in finding that playing the tape in open court and allowing WPXI to obtain a copy of the transcript of the proceeding did not sufficiently protect the right of access under these circumstances. The potential prejudicial impact of the tape, the Commonwealth claims, is significant because hearing the defendant vocalizing threats

proceedings." *See Press–Enterprise*, 478 U.S. at 10 n. 3, 106 S.Ct. at 2741 n. 3.

toward the victim would cause anyone to form substantial bias against the defendant.

As a policy matter, we differ with the Superior Court's analysis of the considerations outlined in *Fenstermaker*. Although tape recordings played at preliminary hearings are certainly different from affidavits that accompany arrest warrants, this Court has noted the applicability of the policies underlying the right of the public to observe criminal proceedings to the right of the public to inspect and copy judicial records and documents. *See Fenstermaker*, 515 Pa. at 507–08, 530 A.2d at 417–18. In this regard, allowing public access to preliminary hearing exhibits, like the tape recording at issue, will serve to promote fairness from the outset of criminal proceedings and public confidence in the fairness and efficacy of the criminal justice system. Contrary to the Superior Court's conclusion, the fact that the tape may later be deemed inadmissible at trial, if a trial is even held, does not negate the benefits of openness at this stage of the proceedings.

We also credit WPXI's argument that the status of materials as "part of the record" or "filed with the court," though relevant, is not necessarily dispositive when deciding whether an item is a public judicial record or document. The common law right of access is based upon the public's interest in knowing about events as they actually transpire and not simply on what is filed with a court or formally admitted into evidence. *See Criden I*, 648 F.2d at 828; *accord United States v. Martin*, 746 F.2d 964, 969 (3d Cir.1984) ("[W]e do not suggest that the fact that requested materials are not in evidence can never be a *relevant* consideration; we hold only that the district court erred in treating it as a *dispositive* consideration.") (emphasis in original).

Additionally, this Court has consistently given weight to the character of the materials sought in terms of whether they are of the sort upon which a judge can base a decision. *See PG Publishing*, 532 Pa. at 6, 614 A.2d at 1108 ("The documents upon which the district justice bases a decision to issue a search warrant are also judicial in character, for the decision to issue a search warrant is a judicial decision."); *Fenstermak-*

*er*, 515 Pa. at 509, 530 A.2d at 418 ("[D]ocuments upon which a magistrate bases a decision to issue an arrest warrant are clearly judicial in character, for the decision to issue a warrant is itself a judicial one reflecting a determination that the affidavits and the information contained therein provide a sufficient basis upon which to justify an arrest."). The Commonwealth's presentation at a preliminary hearing forms the basis of the magistrate district judge's legal decision as to whether the charges will be held for trial, and thus the audiotape at issue was clearly the type of material upon which a judicial decision is based. Further, the disclosure of the tape recording at the open preliminary hearing and in the form of a transcript, regardless of potential admissibility at trial, renders the Commonwealth's assertion that the tape is not a public document untenable.[7]

Our conclusion that the tape recording at issue is a public judicial record or document, however, does not end the inquiry of whether WPXI will be entitled to a copy of the audiotape. While there is a "presumption—however gauged—in favor of public access to judicial records," *Nixon*, 435 U.S. at 602, 98 S.Ct. at 1314, the right to examine public judicial documents is not absolute, and courts retain supervisory power over their records and documents. *See Fenstermaker*, 515

7. To the extent that Madame Justice Baldwin, in her concurring opinion, suggests that the audiotape in issue is not a public judicial record or document, her position is contradicted by cases that she references for support. For example, in *United States v. McDougal*, 103 F.3d 651 (8th Cir.1996), the federal court expressly distinguished the subject matter of that decision, videotaped deposition testimony of President Clinton as a witness, from audiotapes reflecting the primary conduct of witnesses or parties. *See id.* at 657. Further, the court specifically indicated that a common law right of public access ordinarily would apply to the latter. *See id.*

The distinction noted in *McDougal* also answers Justice Baldwin's concern regarding the asserted tension between media access to court proceedings and Pennsylvania Rule of Criminal Procedure 112. *See* Concurring Opinion, at 298–99, 924 A.2d at 657–58. Although the rules may prohibit the recording or broadcasting of courtroom proceedings under most circumstances, they do not apply to the broadcast of an audiotape that is not a recording of the proceedings. *See* Pa.R.Crim.P. 112; *accord* Code of Judicial Conduct, Canon 3.A(7). Again, the recording at issue is simply not that of a judicial proceeding, but rather, of the primary conduct of a criminal defendant.

Pa. at 513, 530 A.2d at 420. Indeed, this Court has determined that, "[w]here the presumption of openness attached to a public judicial document is outweighed by circumstances warranting closure of the document to public inspection, access to the document may be denied." *Id.* The burden of showing that closure is warranted under the circumstances is on the party seeking to prevent access; that party must obtain a court order sealing the documents. *See id.* at 513–14, 530 A.2d at 420–21. The decision of whether to seal the documents is left to the sound discretion of the trial court, which must hold a hearing and place on the record its reasoning and the factors relied upon in reaching its decision. *See id.* Furthermore, upon request, the trial court must inspect the items in camera before reaching its decision. *See PG Publishing,* 532 Pa. at 9, 614 A.2d at 1110.

The Commonwealth's arguments in this regard focus primarily upon the possibility that the prejudicial impact of the audiotape will violate Ms. Upshur's right to a fair trial, observing that threats made by the defendant to one of the victims would cause potential jurors to form a fixed bias against Ms. Upshur. Similarly, the Superior Court emphasized the potential impact of the tape's contents in audio form, characterizing the audiotape as "highly inflammatory." *See Upshur,* 882 A.2d at 504. As the common pleas court found, however, the Commonwealth presented no evidence that prejudice would result from a broadcast of the tape recording and, notably, did not request that the trial judge listen to the tape *in camera* before ruling on the issue of WPXI's right to copy the recording. Although the Commonwealth correctly notes that the possibility that pretrial publicity will affect the defendant's right to a fair trial is important, pretrial publicity is not by itself sufficient to render a trial unfair and prevent public access. *See Fenstermaker,* 515 Pa. at 513, 530 A.2d at 420 (citing *Commonwealth v. Romeri,* 504 Pa. 124, 132, 470 A.2d 498, 502 (Pa.1983) ("[E]ven if there has been extensive pretrial publicity, a fair trial is not necessarily precluded.")). Indeed, the mere statement of one party that allowing public dissemination of a record or document will prejudice the trial,

without additional evidence, does not warrant a denial of access. *See id.* ("[I]n view of the presumption of openness attached to such documents, it is inconsistent to permit the sealing of such affidavits upon the *mere* request of a District Attorney or defense counsel.") (emphasis in original); *accord Upshur*, 882 A.2d at 507 (Popovich, J., dissenting) (noting that the court should not "declare, based solely on the Commonwealth's characterization of the audiotape as vivid, powerful and potentially inflammatory, that the release of the audiotape will cause Upshur to have an unfair trial even before the empanelment of the jury and the commencement of trial.") (internal quotation marks omitted).

Additionally, the trial court determined that the potential contamination of the jury pool could be adequately addressed by *voir dire* and change of venue. The availability of these reasonable alternatives minimizes the potential impact of public disclosure of the audiotape and weighs against a denial of access. *See Fenstermaker*, 515 Pa. at 513, 530 A.2d at 420; *Commonwealth v. Hayes*, 489 Pa. 419, 428, 414 A.2d 318, 322 (1980) (concluding that the closure of a pretrial suppression proceeding may not be ordered "where there is an effective and efficient alternative means to assure the accused's fair trial rights").[8]

Moreover, although the Commonwealth correctly observes that the questionable admissibility of an item of evidence may be a factor weighing in favor of denying access to a public judicial record or document, it is not a dispositive consideration, as pre-trial proceedings, including suppression hearings, are subject to the presumption of openness, regardless of their outcome. *See, e.g., Criden II*, 675 F.2d at 557; *Hayes*, 489 Pa. at 437–38, 414 A.2d at 327. With regard to the present matter, the Commonwealth's concession that tran-

8. We note that a more difficult question regarding the existence of reasonable alternatives might arise should a trial judge, upon listening to an audiotape, determine that *voir dire* would not sufficiently protect the defendant's fair trial rights. In the present matter, however, the trial court clearly found *voir dire* to be an adequate method of protecting Ms. Upshur from any potential prejudice, and the Commonwealth did not present the tape itself to refute that finding.

scripts of the tape recording may be disclosed, *see* Brief for Appellee at 8–9, undermines its contention that access to the tape should be denied due to possible violations of the Wiretap Act, as the Act not only creates a separate violation for each publication of an illegally intercepted communication in its original form, but also prohibits each subsequent disclosure of the contents of such a communication. *See* 18 Pa.C.S. § 5703(3).

In view of the trial court's findings, we do not believe that it was an abuse of discretion to permit WPXI to obtain a copy of the tape recording. Indeed, the Superior Court's reliance upon the Commonwealth's characterization of the tape as inflammatory and prejudicial, without the benefit of review of the tape, was erroneous, given the presumption of openness attached to public judicial records and documents,[9] including the tape recording presently at issue, and the existence of the reasonable alternative of *voir dire* to a denial of access. *See Fenstermaker*, 515 Pa. at 513, 530 A.2d at 420. Accordingly, we conclude that audiotapes played during preliminary hearings are public judicial records or documents to which the common law right of access attaches and that the trial court properly permitted WPXI access to a copy of the tape at issue.[10]

**9.** We find it unnecessary here to address the split among federal circuit courts of appeals concerning the strength of the presumption of openness, as discussed by Justice Baldwin. *See* Concurring Opinion, at 296–97, 924 A.2d at 656. Given the lack of evidence presented by the Commonwealth to support its contention that access to the audiotape at issue should be denied, even under the weaker variant of the presumption, the trial court did not abuse its discretion in granting WPXI access to a copy of the tape recording.

**10.** We certainly appreciate Mr. Justice Castille's point that the broadcast of a tape recording of the primary conduct of a criminal defendant will likely have a significantly different impact than corresponding quotations from a transcript. Further, we have fully recognized the trial courts' ability, in the sound exercise of their discretion, to deny or limit access (for example, by providing the media with only a copy of a written transcript), in appropriate circumstances and upon due explanation. However, we cannot agree with the apparent suggestion that the audiotape itself is not a public judicial record or document in the first instance simply because a transcript exists, a proposition for which no authority is referenced in the concurrence. Significantly, written

Finally, Madame Justice Baldwin's characterization of this decision as a "sweeping determination that access to copies of audio (and perhaps video) tapes used in the judicial process must be given to the press," Concurring Opinion, at 300, 924 A.2d at 659, reflects a misunderstanding of our opinion, which recognizes the discretion of the trial courts to withhold or limit access to public judicial records and documents in appropriate circumstances, and offers no comment whatsoever concerning videotape recordings of witness testimony, such as were at issue in the *McDougal* case.[11] *See supra* note 7.

Although the above reasoning represents the view of a plurality, six Justices are aligned in terms of the result that disclosure of the audiotape was within the sound discretion of the trial court. Accordingly, the order of the Superior Court is reversed, and jurisdiction is relinquished.

transcripts are not always accurate, *see, e.g., Commonwealth v. Markman,* 591 Pa. 249, 266 n. 5, 916 A.2d 586, 596 n. 5 (2007), and examination and dissemination of original public judicial records or documents, where appropriate, allows the media, and thereby the public, to carefully and more directly evaluate the performance of the justice system. *See, e.g., Littlejohn v. Bic Corp.,* 851 F.2d 673, 678 (3d Cir.1988) ("[T]he bright light cast upon the judicial process by public observation diminishes possibilities for injustice, incompetence, perjury, and fraud. Furthermore, the very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness."). Indeed, courts have frequently distinguished between the common law and First Amendment rights to access on the basis that common law access is to actual copies of public judicial records, whereas the constitution requires only access to the substance of the information contained within such materials. *See, e.g., Nixon,* 435 U.S. at 598, 610, 98 S.Ct. at 1312, 1318; *Commonwealth v. Long,* 592 Pa. 42, 51 n. 6, 922 A.2d 892, 898 n. 6 (2007). Thus, while a trial judge's discretion to withhold or limit access to audiotape recordings of a defendant's primary conduct that have contributed to a judicial decision may be wide, we are unable to agree with the apparent suggestion that it is limitless.

11. As the common law right of access is dispositive in the present case, we need not address any constitutional claims which have been advanced. *See P.J.S. v. Pennsylvania State Ethics Com'n,* 555 Pa. 149, 153, 723 A.2d 174, 176 (1999) ("[A] court should not reach the constitutional issue if the case can properly be decided on non-constitutional grounds."); *In re Fiori,* 543 Pa. 592, 600, 673 A.2d 905, 909 (1996) ("[C]ourts should avoid constitutional issues when the issue at hand may be decided upon other grounds.").

Justice BAER joins the opinion.

Chief Justice CAPPY files a concurring opinion.

Justice CASTILLE files a concurring opinion in which Justice EAKIN joins.

Justice BALDWIN files a concurring opinion.

Justice FITZGERALD files a dissenting opinion.

Chief Justice CAPPY concurring.

I join the Opinion Announcing the Judgment of the Court in all respects. I write separately only to emphasize that WPXI is only entitled to access a copy of the audiotape. There is simply no reason that WPXI should be given custody of the tape itself, as such custody could raise serious security concerns regarding potential evidence. The risk of inadvertent destruction or loss of evidence is too great. Rather, it is within the trial court's supervisory powers to determine the best way to provide access to the audiotape in question.

Additionally, I point out that the party seeking access to the document in question should be charged with the costs related to replication.

Justice CASTILLE concurring.

I concur in the result, but not in the reasoning of the Opinion Announcing the Judgment of the Court.

My thoughts concerning access to a copy of the audio tape and the perceived benefits of that access are similar to those of Madame Justice Baldwin, and I join the sections of her responsive opinion regarding such.

I write to stress that appellant has no "right" of access to a copy of the actual audio tape recording, as opposed to the preliminary hearing transcript, which contains the verbatim substance of the recording. The courts are not obliged to provide the media with the form of information which is "most dramatic or sensational," or which might be best for programming and ratings purposes. Thus, like Justice Baldwin, I see

a fundamental distinction between a copy of the tape itself and a transcript.

With respect to balancing relevant policy factors, as outlined in this Court's opinion in *Commonwealth v. Fenstermaker*, 515 Pa. 501, 530 A.2d 414 (1987), I see room for reasonable disagreement. Quite frankly, I do not believe the Opinion Announcing the Judgment of the Court's balancing analysis is more persuasive than the expression of view by the Honorable Justin M. Johnson, writing for the Superior Court majority below. I do not believe that disclosure of a copy of the recording, as opposed to the transcript equivalent, serves as "an important check on the criminal justice system, ensuring not only the fair execution of justice, but also increasing public confidence and understanding." OAJC Op. at 282, 924 A.2d at 647. In my judgment, the effect on the public's confidence and understanding has nothing to do with the tape vs. transcript issue, and everything to do with the context (or lack of context) in which the media ultimately elect to portray the matter. Further, I have difficulty believing that the tape does anything greater than the transcript to operate as a legitimate "check" on the criminal justice system, much less does it "ensure the fair execution of justice." These openness concerns are more than adequately met by substantive access.

Ultimately, I concur because, even though I do not believe that the media has a "right" of access to a copy of an audiotape which is read into evidence at a preliminary hearing, I believe that the decision to order release of a copy is a discretionary matter for the trial judge. Notwithstanding the persuasiveness of the expression by the Superior Court majority, I would not overturn the trial judge's decision in the case *sub judice* merely because he could, in my view, just as justifiably have denied release of a copy of the tape.

Justice EAKIN joins this opinion.

Justice BALDWIN concurring.

I concur in the result of Justice Saylor's majority opinion on the ground that the trial judge did not abuse his discretion in

granting WPXI access to a copy of the audio tape at issue, but write separately to emphasize that the trial judge was not compelled to grant access to anything beyond a transcript of that tape. I believe that there is a substantive difference between an audio tape and a transcript which was not addressed by the majority.

As a preliminary matter, this Court has not yet made an express determination that a right of public access exists for preliminary hearings, as they are practiced in this Commonwealth. This Court has found that there is a rebuttable presumption of public access to various documents often associated with pre-trial proceedings, including: arrest warrants and their supporting affidavits (*Commonwealth v. Fenstermaker*, 515 Pa. 501, 530 A.2d 414 (1987)); search warrants and their supporting affidavits (*PG Publishing Company v. Com.*, 532 Pa. 1, 614 A.2d 1106 (1992)); and suppression hearings where a less exclusive alternative is available (*Commonwealth v. Hayes*, 489 Pa. 419, 414 A.2d 318 (1980) (plurality)). In *Press–Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986), the United States Supreme Court found that "[t]he qualified First Amendment right of access to criminal proceedings applies to preliminary hearings *as they are conducted in California*." *Id.* at 13, 106 S.Ct. at 2743, 92 L.Ed.2d at 13 (emphasis added). That Court relied on the facts that at the 41–day–long preliminary hearing, the accused had "the right to personally appear at the hearing, to be represented by counsel, to cross-examine hostile witnesses, to present exculpatory evidence, and to exclude illegally obtained evidence." *Id.* at 12, 106 S.Ct. at 2742. There is no procedure in Pennsylvania to exclude illegally obtained evidence from a preliminary hearing. Pa.R.Crim.P. 542(C). While this Court may determine that this difference is not sufficient to bar public access to judicial documents from preliminary hearings, this issue should be squarely addressed.

It is true that in this Commonwealth we have a constitutional presumption of openness of courts, PA. CONST. art. I, § 11, as well as a common law presumption of public access to judicial records and documents. *Nixon v. Warner Communications*,

*Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570, 579–80 (1978); *Commonwealth v. Fenstermaker,* 515 Pa. 501, 508, 530 A.2d 414, 418 (1987). However, that does not mean the media must be provided with a specific mode of information. Information, in and of itself, is all that must be provided. Indeed, this Commonwealth has not previously created a "best mode" requirement for evidence, i.e., there is no requirement that a television station be permitted access to the most dramatic or sensational version of a judicial document, and, prior to today's opinion, no requirement that an audio or video tape be released in addition to a transcript. I write further to provide substance to my disagreement with the majority opinion.

First of all, I would note that the United States Supreme Court has determined that "[t]he First Amendment generally grants the press no right to information superior to that of the general public." *Nixon,* 435 U.S. at 609, 98 S.Ct. at 1318, 55 L.Ed.2d at 586. It is also true that in *Richmond Newspapers v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), which produced no Opinion of the Court, six justices agreed that the First Amendment requires public access to trials. This Court, in *Fenstermaker,* noted that the factors used by the United States Supreme Court in its analysis of the First and Sixth Amendment rights of access were equally applicable for analysis under Pennsylvania Constitution Article I, Sections 9 ("public trial") and 11 ("courts shall be open"). Thus, the factors enunciated by the United States Supreme Court in *Gannett Co. v. DePasquale,* 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979) and *Richmond Newspapers* that militate in favor of public access are applicable. These factors include:

> to assure the public that justice is done even-handedly and fairly; to discourage perjury and the misconduct of participants; to prevent decisions based on secret bias or partiality; to prevent individuals from feeling that the law should be taken into the hands of private citizens; to satisfy the natural desire to see justice done; to provide for community catharsis; to promote public confidence in government and

> assurance that the system of judicial remedy does in fact work; to promote the stability of government by allowing access to its workings, thus assuring citizens that government and the courts are worthy of their continued loyalty and support; [and] to promote an understanding of our system of government and courts.

*Fenstermaker* at 507, 530 A.2d at 417. What I believe is lacking from the majority's analysis is how these factors (or others) militate in favor of releasing an actual copy of the audio tape as opposed to the transcript of the audio tape that was initially released by the magistrate. I do not find sufficient incremental benefit in any of these factors to justify any harm done by the release of the tape, with such harm encompassing decreased privacy of the other participants on the tape, including the victim, and the increased pain to the victim's family.

Federal courts have addressed the issue of access to audio and video tapes as "judicial documents" more frequently than courts in this Commonwealth. There is a split amongst the Circuits regarding whether the presumption of public access is a "strong presumption." For the most part, whether the presumption is considered to be strong is determinative of the issue, i.e., if there is a strong presumption of access, the tapes will be released, but if the presumption is weaker, the tapes will likely not be released. In the Second, Third, Fourth, Seventh and District of Columbia Circuits, the presumption of access is strong. *See U.S. v. Graham*, 257 F.3d 143 (2d Cir.2001); *U.S. v. Martin*, 746 F.2d 964 (3d Cir.1984); *U.S. v. Criden*, 648 F.2d 814 (3d Cir.1981); *In re Associated Press*, 172 Fed.Appx. 1 (4th Cir.2006) (tapes used in Moussaui trial must be released after being fully disclosed to jury—but note that in this case the contents of the tapes had not been transcribed); *U.S. v. Guzzino*, 766 F.2d 302 (7th Cir.1985); and *In re Nat'l Broad. Co.*, 209 U.S.App.D.C. 354, 653 F.2d 609 (D.D.C.1981). However, in the Fifth, Sixth and Eighth Circuits, the presumption of access is less strong. *See Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 431–34 (5th Cir. 1981); *Beckham, infra* (6th Cir.); and *McDougal, infra* (8th

Cir.). It should be noted that in many of the cases where public access was granted (including both leading cases from the Third Circuit), the defendant in the underlying action was a public figure.

The Third Circuit has released audio tapes, finding that such tapes are judicial documents. *Criden, supra; Martin, supra.* However, even in *Martin,* where the Third Circuit found that audio tapes must be released, it indicated that "[w]here proffered evidence is found inadmissible because it is unreliable, or because it is more prejudicial than probative, the dangers of broad dissemination may substantially outweigh any benefits." *Martin,* 746 F.2d at 969. Thus, where, as here, there is a question as to the admissibility of the evidence, which will not be determined until a suppression hearing held by the trial court, rather than the magistrate, the actual copy of the tape should be withheld until that decision is reached. I would also note that contrary to Appellant's contentions, Third Circuit precedent is not binding on this Court, but rather is to be used as persuasive authority. *See Hall v. Pa. Bd. of Prob. & Parole,* 578 Pa. 245, 254–55, 851 A.2d 859, 865 (2004).

In 1996, the Eighth Circuit determined that a transcript of a video taped deposition of President Clinton provided sufficient public access and a copy of the actual tape itself was not required. *U.S. v. McDougal,* 103 F.3d 651 (8th Cir.1996). In analyzing common law access right to the tape, the Eighth Circuit indicated that:

(1) substantial access to the information provided by the videotape had already been afforded; (2) release of the videotape would be inconsistent with the ban on cameras in the courtroom under Fed.R.Crim.P. 53; (3) in other cases involving videotaped testimony of a sitting president, the tapes were not released; and (4) there exists a potential for misuse of the tape, a consideration specifically recognized in *Nixon* . . . .

*Id.* at 654. The court also relied upon its determination that "courts should avoid becoming the instrumentalities of commercial or other private pursuits." *Id.* at 658 (*citing Nixon*).

The Sixth Circuit, in *U.S. v. Beckham,* 789 F.2d 401 (6th Cir.1986), agreed that the common law right of access to judicial documents included tape recordings, but found that "when the right to make copies of tapes played in open court is essentially a request for a duplicate of information already made available to the public and the media," then the lower court has far more discretion to determine that further access is not required. *Id.* at 415. According to the court in *Beckham,* the First Amendment values served by the presumption of openness of courts are:

> the appearance of fairness; public confidence in the judicial system; the discouragement of misconduct, perjury or secret bias; the enhancement of the performance of all parties, the protection of the judge from imputations of dishonesty; the education of the public; the provision of a safe outlet for public hostility and concern; the avoidance of covert actions and secret proceedings; and equal treatment of rich and poor.

*Id.* at 406–07 (*citing Richmond Newspapers*). These values are not enhanced by duplicative public access being provided to the media.

As the Eighth Circuit noted in *McDougal, supra,* there is a tension in the federal courts between media access to the courts and the federal rules of procedure which ban cameras from the court room. That tension also exists in Pennsylvania. Pennsylvania Rule of Criminal Procedure 112, regarding publicity, broadcasting, and recording of proceedings indicates that: "[e]xcept as provided in paragraph (D), the stenographic, mechanical, or electronic recording, or the recording using any advanced communication technology, of any judicial proceedings by anyone other than the official court stenographer in a court case, for any purpose, is prohibited." Pa.R.Crim.P. 112(C). Paragraph D relates to a recording made by a defendant or affiant for purposes of a written record for subsequent proceedings. Additionally, this Commonwealth's Code of Judicial Conduct, Canon 3.A(7) limits any "broadcasting, televising, recording or taking photographs in the court-

room" to very limited circumstances, largely for educational purposes.[1]

This tension does not impair access to trials. As discussed above, the media has the same right to attend trials as any other member of the public. *See Nixon, supra, Fenstermaker, supra.* Although many media organizations have ethical policies limiting their publication of the names of victims of crime, the courts and the legislature do not limit the media's ability to publicize the information obtained by attending these trials.[2] While access to the audio tape at issue in this case

---

1.   Judges should prohibit broadcasting, televising, recording or taking photographs in the courtroom and areas immediately adjacent thereto during sessions of court or recesses between sessions, except that a judge may authorize:

(a) the use of electronic or photographic means for the presentation of evidence, for the perpetuation of a record or for other purposes of judicial administration;

(b) the broadcasting, recording, or photographing of investitive, ceremonial, or naturalization proceedings;

(c) the photographic or electronic recording and reproduction of appropriate court proceedings under the following conditions:

(i) the means of recording will not distract participants or impair the dignity of the proceedings; and

(ii) the parties have consented; and the consent to being depicted or recorded has been obtained from each witness appearing in the recording and reproductions; and

(iii) the reproduction will not be exhibited until after the proceeding has been concluded and all direct appeals have been exhausted; and

(iv) the reproduction will be exhibited only for instructional purposes in educational institutions.

(d) the use of electronic broadcasting, television recording and taking photographs in the courtroom and areas immediately adjacent thereto during sessions of court or recesses between sessions of any trial court nonjury civil proceeding, however, for the purposes of this subsection 'civil proceedings' shall not be construed to mean a support, custody or divorce proceeding. Subsection (iii) and (iv) shall not apply to non-jury civil proceedings as heretofore defined. No witness or party who expresses any prior objection to the judge shall be photographed nor shall the testimony of such witness or party be broadcast or telecast. Permission for the broadcasting, televising, recording and photographing of any civil nonjury proceeding shall have first been expressly granted by the judge, and under such conditions as the judge may prescribe in accordance with the guidelines contained in this Order.

2.   *See* 42 Pa.C.S. § 5988 (prohibiting the **courts** from releasing the name of a juvenile victim of physical or sexual abuse).

does not directly implicate the rules regarding recording court sessions, I find that a presumption of access to audio and video tapes is difficult to reconcile with the rules propagated by this Court which prohibit recording of courtroom proceedings. However, if one assumes that information is not required to be delivered to the media in its most dramatic form, and thus a transcript of the audio tape is sufficient, the tension between the rules and access to judicial documents is greatly reduced. When there are "no restrictions upon press access to, or publication of any information in the public domain," Constitutional rights are not implicated. *Nixon* at 609, 98 S.Ct. at 1318, 55 L.Ed.2d at 586. Information was made available. There is no constitutional requirement that copies of the actual tapes at issue be released.

On the narrow ground that the decision regarding access to judicial records is within the sound discretion of the trial court, and Judge James did not abuse that discretion by providing access to a copy of the audio tape in question, I would join the majority opinion's result. I cannot join the sweeping determination that access to copies of audio (and perhaps video) tapes used in the judicial process must be given to the press, particularly where, as here, the tape was played at a preliminary hearing and no admissibility determination had been made.

Justice FITZGERALD dissenting.

I respectfully dissent. I believe that providing the media with copies of evidence for public dissemination during trial court proceedings can severely undermine the integrity of a criminal trial. I would affirm the Superior Court's holding reversing the trial court's order in this case, especially because the audiotape was never entered into evidence or otherwise filed with the court and made part of the record, despite the fact that it was played during the preliminary hearing. *See Commonwealth v. Upshur*, 882 A.2d 499, 503 (Pa.Super.2005). Although I do not oppose release of a transcript of the tape, I do not view the tape itself as a "public judicial record" subject to public access under the circumstances.